| | |
|---|---|
| IGLESIA NI CRISTO, <br><br> Plaintiff, <br><br> v. <br><br> LUISITO E. CAYABYAB, et al., <br><br> Defendants. | Case No. 18-cv-00561-BLF <br><br> **ORDER DEFERRING RULING ON ANTI-SLAPP MOTION; AND GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> [Re: ECF 14, 15] |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

This lawsuit arises from a falling out between a church, Plaintiff Iglesia Ni Cristo ("INC"), and many of its former ministers, officers, and members, Defendants Luisto Cayabyab, Isaias Samson, Jr., Rolando Dizon, Jr., Lionel Roque Dela Uso, Allan Monte De Ramos, Jeriel Nemis, Jesle Llaban Kuizon, Bernard Garcia, Liezl Diaz-Deocampo, Edwin Lionel Mora, and Allan Villanueva ("Individual Defendants"). After leaving INC, some (but not all) of those individuals joined a different church, Defendant H20 Now USA ("H20"). INC claims that H20 and its officers and members hold themselves out as affiliated with INC, unlawfully using INC's name, seal, flag, and hymns. Moreover, INC claims that H20 and the Individual Defendants tell lies about INC, expose confidential information about INC, and defame INC in social and print media. INC sues H20 and the Individual Defendants for trademark and copyright infringement under federal law, and for unfair competition, breach of confidential relationship, and libel under California state law.

Defendants have filed a special motion to strike INC's state law claims under California Code of Civil Procedure § 425.16 ("anti-SLAPP motion"), as well as a motion to dismiss all

claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, ruling on the anti-SLAPP motion is DEFERRED and the motion to dismiss is GRANTED WITH LEAVE TO AMEND.

## I. BACKGROUND

### A. Plaintiff INC's Allegations

INC filed the complaint in this action on January 25, 2018, alleging the following facts. INC is a non-profit religious corporation that was founded in the Philippines in 1914 and now has established congregations in approximately 144 countries and territories around the world. Compl. ¶ 16, ECF 1. INC has one governing body with a Presiding Elder, who has control over all theological doctrines, assets, and operation of INC's ministries throughout the world. Compl. ¶ 17. INC has used the same corporate seal and flag since 1914 in the Philippines and since 1968 in the United States. Compl. ¶¶ 19-20. INC obtained a federal trademark registration of the seal from the United States Patent and Trademark Office ("PTO") in 2014. Compl. ¶ 21. INC is the owner of a common law trademark with respect to the flag, and it applied for federal registration of the flag in August 2017. Compl. ¶ 22. INC also has applied to the United States Copyright Office for copyrights on several works, including hymns and hymnals. Compl. ¶ 24.

Defendant H20 was formed by a group of ministers and members who were expelled from INC. Compl. ¶¶ 27-29. H20 conducts gatherings and offers worship services in cities throughout California, the east coast of the United States, and Canada. Compl. ¶ 30. H20 and its officers and members hold themselves out as INC congregations, using INC's name, the same arrangement of chairs used by INC, INC's hymns and hymnal, and INC's seal and flag. *Id.* In this manner, H20 and its officers and members deceive INC's members into believing that they are attending INC's worship services. *Id.* INC members have made monetary offerings while attending such worship services organized by H20. Compl. ¶ 31. H20 also uses modern technology such as online meetings, Webex, and Xoom to gather and conduct worship services under the name INC. Compl. ¶¶ 32-33. Those websites display INC's official seal and flag. Compl. ¶¶ 34-35.

H20 and some of the Individual Defendants operate websites which contain rumors, unfounded allegations, accusations, and lies about INC, and which expose confidential

information about INC. Compl. ¶ 36. Members of H20 have conducted demonstrations and protests during INC's worship services in many California cities, disrupting INC's worship services and creating confusion by using INC's name, seal, and flag. Compl. ¶ 37.

Finally, members of H20 have misrepresented their status as INC members in order to persuade INC members to attend gatherings at which third party businesses give direct marketing presentations regarding commercial goods such as rice cookers, ACEA water, air humidifiers, and juicers, and INC members are encouraged to purchase such goods. Compl. ¶ 38.

Based on these allegations, INC sues H20 and the Individual Defendants for: (1) false designation of origin under the Lanham Act; (2) copyright infringement; (3) federal trademark infringement; (4) infringement of unregistered logo and trademark; (5) unfair competition under California's Unfair Competition Law ("UCL"); (6) unfair competition under California common law; (7) breach of confidential relationship under California law; and (8) libel under California law. Compl., ECF 1.

### B. Defendants' Version of Events

Defendants' version of events is quite different. In declarations filed in support of the anti-SLAPP motion, the Individual Defendants assert that they resigned or were expelled after publicly criticizing INC for corruption within the church and lavish lifestyles maintained by INC officers. *See, e.g.,* Deocampo Decl. ¶ 2, ECF 15-5 (expelled after protesting corruption at INC); Kuizon Decl. ¶ 2, ECF 15-4 (expelled after showing online video discussing corruption and mismanagement at INC); Mora Decl. ¶ 2, ECF 15-3 (expelled after participating in rally protesting INC); Villanueva Decl. ¶ 3, ECF 15-2 (expelled after demonstrating outside INC's headquarters). Defendants state that H20 Now USA was incorporated for the purposes of protesting corruption at INC and providing assistance to persons victimized by INC. *See, e.g.,* Cayabyab Decl. ¶ 4, ECF 15-7. Defendants deny that they hold themselves out as affiliated with INC or use INC's hymns, hymnal, seal, or flag. *See, e.g.,* Ramos Decl. ¶¶ 4-6, ECF 15-1; Mora Decl. ¶¶ 4-6, ECF 15-3; Kuizon Decl. ¶¶ 5-7, ECF 15-4. Some of the Individual Defendants deny membership or involvement with H20. *See, e.g.,* Villanueva Decl. ¶ 5, ECF 15-2. Defendants contend that INC has filed this lawsuit in retaliation for, and to chill, Defendants' public criticism of INC.

## II. ANTI-SLAPP MOTION

### A. Legal Standard

"Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (quotation marks and citation omitted). California's anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). A defendant in federal court may bring an anti-SLAPP motion with respect to California state law claims asserted under either diversity jurisdiction or supplemental jurisdiction. *Jen v. City & Cty. of San Francisco*, No. 15-CV-03834-HSG, 2016 WL 3669985, at *11 (N.D. Cal. July 11, 2016). The anti-SLAPP statute does not apply to claims asserted under federal law. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

"The analysis of an anti-SLAPP motion proceeds in two steps." *Barry v. State Bar of California*, 2 Cal. 5th 318, 321 (2017) (quotation marks and citation omitted). At step one, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* (quotation marks and citation omitted). When a claim is mixed, meaning that it is based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at the first step. *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). Only if the court determines that relief is sought based on protected activity does it reach the second step. *Id.*

At step two, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396. The court "will review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). "[W]hen an anti-SLAPP motion to

4

strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.* at 834. If the claim is not adequately stated in the initial complaint, the district court may defer consideration of the anti-SLAPP motion pending the filing of a first amended complaint. *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091-92 (9th Cir. 2004) (holding that district court did not err in deferring consideration of Covad's anti-SLAPP motion pending receipt of Verizon's first amended complaint, and affirming denial of anti-SLAPP motion to strike first amended complaint).

"[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Planned Parenthood*, 890 F.3d at 834. Under that standard, "[t]he court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." *Baral*, 1 Cal. 5th at 396. "[I]n such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Planned Parenthood*, 890 F.3d at 834.

If the plaintiff ultimately fails to meet its burden at the second step, the claim based on protected activity is stricken and "[a]llegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." *Baral*, 1 Cal. 5th at 396.

**B.     Discussion**

Defendants have filed an anti-SLAPP motion directed to all state law claims asserted in the complaint: Claim 5 for unfair competition under California's UCL, Claim 6 for unfair competition under common law, Claim 7 for breach of confidential relationship, and Claim 8 for libel.

At the first step of the analytical framework set forth above, the Court finds that Defendants have made a threshold showing that each of the state law claims is based at least in part on allegations of protected activity. The complaint alleges that websites operated by Defendants, *www.incsilentnomore.com*, *www.incdefenders.org*, *www.incdefendersmedia.com*,

*www.incfromtheedge.wordpress.com*, and *www.increflections.wordpress.com*, "contain and publish blog entries that spread rumors, unfounded allegations and accusations and lies about INC's Administration and expose confidential information about INC." Compl. ¶ 36. The complaint also alleges that "Members of H20 Now directly and openly defame INC and its Administration in social media (including Facebook, Instagram and Twitter) and in print media." *Id.* Moreover, the complaint alleges that "Members of H20 Now conducted demonstrations and protests during INC's worship services in Fremont, Bakersfield, Anaheim, Los Angeles, Long Beach and in the U.S. Main Office of INC in Burlingame, California," and that "[d]emonstrators disrupted INC's worship services and created confusion among INC members as they used INC's name, Seal and Flag. Compl. ¶ 37.

These allegations are incorporated into each and every one of INC's state law claims. *See* Compl. ¶¶ 66, 71, 76, 81. The conduct described in the allegations – public comment and public protest – is protected activity under California's anti-SLAPP statute. *See Grenier v. Taylor*, 234 Cal. App. 4th 471, 483 (2015) (defendant's internet posts accusing pastor of child abuse and theft constituted protected activity under anti-SLAPP statute); *San Diego Puppy, Inc. v. City of San Diego*, No. 13-CV-2783-BTM-DHB, 2014 WL 4546390, at *3 (S.D. Cal. Sept. 11, 2014) ("Speech activities, e.g., protests, generally enjoy Constitutional protections even on certain privately owned property such as a strip mall and its parking lot."). Accordingly, on the face of the complaint it appears that all of INC's state law claims are based at least in part on protected activity.

INC argues that its state law claims are grounded primarily in Defendants' alleged unlawful use of INC's trademarks and copyrights, not in Defendants' alleged public comment and protest activities. As an initial matter, INC's characterization of its claims is not supported by the allegations of the complaint. For example, Claim 7 for breach of confidential relationship is based expressly on alleged disclosure of INC's confidential information, presumably through public comment on the websites mentioned above. *See* Compl. ¶¶ 77-78. Claim 8 for libel is based on allegations that Defendants "have publicly accused Plaintiffs [sic] of lying" and "have authorized, directed, endorsed or approved the lies and false statements regarding INC." Compl. ¶¶ 83-84.

6

Moreover, at the very least the state law claims are "mixed," because as discussed above they all incorporate allegations of protected activity. When evaluating "mixed" claims, the Court must disregard allegations based on unprotected activity – here, infringing use of INC's trademarks and copyrights – and proceed to step two of the analysis with respect to allegations based on protected activity – here, public comment and protest. *See Baral*, 1 Cal. 5th at 396; *JaM Cellars, Inc. v. Vintage Wine Estates, Inc.*, No. 17-01133-CRB, 2017 WL 2535864, at *4 (N.D. Cal. June 12, 2017) ("Thus, courts are to disregard the allegations based on unprotected activity (here, the infringing use) and proceed to the second step of the anti-SLAPP analysis if there are allegations based on protected activity (here, the trademark and COLA applications)." (internal quotation marks and brackets omitted)).

At step two, the burden shifts to INC to demonstrate that each of its state law claims based on protected activity "is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396. Before evaluating INC's showing at step two, the Court must determine whether Defendants' motion challenges the legal sufficiency of INC's claims, in which case the Rule 12(b)(6) standard applies, or whether the motion challenges the factual sufficiency of INC's claims, in which case the Rule 56 standard applies. *See Planned Parenthood*, 890 F.3d at 833-34.

Defendants' motion challenges the legal sufficiency of INC's claims. Although Defendants do submit declaration evidence in support of their anti-SLAPP motion, their briefing on the second step of the analysis focuses entirely on deficiencies in INC's pleading under Rule 12(b)(6) standards. *See, e.g.,* Defs.' Motion at 8 (arguing that UCL claim should be dismissed because it is substantially congruent to Lanham Act claim, and that common law unfair competition claim is defective because INC has not pled likelihood of confusion or commercial transaction); Motion at 10 ("Plaintiff has put forth no allegations regarding the nature of the allegedly confidential information that it conveyed to Defendants," and "has not pled any facts showing a disclosure in violation of a confidentiality understanding"); Motion at 10-11 (arguing that INC has failed to allege which Defendants made which disparaging statements or that any of the blogs constitute facts rather than non-actionable opinions); Defs.' Reply at 7 ("If Plaintiff cannot plead a plausible cause of action under the FRCP 12(b)(6) standard, then Plaintiff as a

matter of law cannot meet the probability of success on the merits standard."). Accordingly, the Court applies the Rule 12(b)(6) standard in its step two determination whether INC has demonstrated that its state law claims are legally sufficient.

For the reasons discussed below in connection with Defendants' motion to dismiss pursuant to Rule 12(b)(6), INC has failed to state a claim upon which relief may be granted under any of its state law theories. Accordingly, INC has not met its burden at step two of the anti-SLAPP analysis.[1] Before making a final determination on Defendants' anti-SLAPP motion, however, the Court will grant INC leave to amend its pleading to either eliminate its allegations of protected activity or allege claims based on protected activity with more specificity. *See Verizon*, 377 F.3d at 1091.

Accordingly, determination of Defendants' anti-SLAPP motion is DEFERRED pending amendment of the complaint. Because amendment to the complaint may eliminate the allegations based on protected activity, the Court concludes that the most efficient course is to TERMINATE the anti-SLAPP motion without prejudice to renewal, if appropriate, after the filing of INC's first amended complaint (if any).

### III. MOTION TO DISMISS

#### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] Because the Court's step two evaluation is conducted under the Rule 12(b)(6) standard, the Court does not consider INC's evidence submitted in opposition to the anti-SLAPP motion or Defendants' evidentiary objections.

8

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Discussion

Defendants move to dismiss each and every claim asserted by INC under Rule 12(b)(6).

#### 1. Trademark (Claims 1, 3, and 4)

INC asserts three claims relating to its trademarks: Claim 1 for false designation of origin under 15 U.S.C. § 1125, Claim 3 for trademark infringement under 15 U.S.C. § 1114, and Claim 4 for infringement of unregistered logo and trademark under 15 U.S.C. § 1125.

The elements of these three claims are similar, although the claim for trademark infringement under § 1114 requires ownership of a registered trademark while the claims for false designation of origin and infringement of unregistered logo and trademark under § 1125 do not. To establish a claim for false designation of origin or trademark infringement under § 1125, "a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, that (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *United States Futsal Fed'n v. USA Futsal LLC*, No. 17-CV-04206-LB, 2018 WL 2298868, at *12 (N.D. Cal. May 21, 2018). "To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that (1) it owns the trademark at issue; (2) the defendant used in commerce without authorization any reproduction, counterfeit, copy, or colorable imitation of the mark in connection with the sale, offering for sale, distribution, or advertising of any goods and services; and (3) the defendant's use of the mark is likely to cause confusion, cause mistake, or deceive." *Id.* at *10.

INC alleges in Claims 1, 3, and 4 that "Defendants" wrongfully used INC's trademarks and thus caused confusion, mistake, and deception as to Defendants' affiliation with INC. However, none of these claims identifies with particularity which trademarks were used by which

9

of the twelve Defendants named in the complaint. In the earlier paragraphs of the complaint, INC identifies numerous registered and unregistered trademarks, including its seal, its executive seal, and its flag. *See* Compl. ¶¶ 19-23. INC also gives examples of allegedly infringing marks which INC claims were displayed on websites operated by Defendants. *See* Compl. ¶¶ 34-35. However, INC does not match up any particular use of its trademarks with any particular Defendant. For example, in Claim 1 for false designation of origin, INC alleges that "Defendants' representations of still being a part of INC, its history and goodwill is a false representation to the public, which causes confusion, mistake and deception as to the affiliation, connection and association of Defendants with INC." Compl. ¶ 42. INC also alleges that "Defendants' wrongful use of INC's Trademarks in connection with the worship services provided by Defendants causes confusion, mistake and deception as to the affiliation, connection and association of Defendants with INC, and /or as to the origin, sponsorship and approval of Defendants' services and activities bearing INC's Trademarks." Compl. ¶ 43.

Claim 3 for trademark infringement and Claim 4 for infringement of unregistered logo and trademark are similarly vague as to which Defendant used which alleged trademark. *See, e.g.*, Compl. ¶ 59 ("Despite knowing that INC owns all right, title and interest in and to the aforementioned trademarks, Defendants continue to use INC's Trademarks in public and continue to post, publish and display INC's Trademarks on websites they operate and own."); ¶ 64 ("Defendants, by their willful and deliberate copying and use of INC's Trademarks and appearance, infringed Plaintiff's unregistered marks and trade dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).").

It also is unclear from the allegations of Claims 1, 3, and 4 whether Defendants used INC's marks in commerce, as required for all of the claims under the authorities set forth above.

In opposition, INC argues at length that it has identified its trademarks with adequate particularity and that use of the trademarks on Defendants' websites satisfies the interstate commerce requirement. Those arguments do not address INC's failure to specify which Defendants used which marks, and the circumstances of that use. INC appears to have attempted to provide some specificity in its identification of parties, set forth in paragraphs 1-13 of the

complaint. For example, INC alleges that Defendant Cayabyab "continues to portray himself as a minister of INC and officiates worship services under INC's name, using the name, and/or using the name of 'Antonio Ebangelista,' a pseudonym for a group of individuals who conduct worship services under the Plaintiff's name." Compl. ¶ 2. INC also alleges that Cayabyab maintains and operates websites such as *www.incsilentnomore.com* and *www.incdefenders.org*, which use "the trademarks and copyrighted material owned by INC." *Id.* By pleading in this way, INC is asking the Court to flip back and forth between the paragraphs of the complaint, guessing which wrongful conduct set forth in the identification of parties is relevant to which claim. Even if the Court were willing to do that – which it is not – allegations that particular Defendants maintain websites which use "the trademarks and copyrighted material owned by INC" does not provide adequate specificity as to *which* of the many marks identified in the complaint INC means.

Accordingly, Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 1, 3, and 4.

### 2. Copyright Act (Claim 2)

Claim 2 for copyright infringement suffers from the same deficiencies identified above with respect to the claims for trademark infringement. "Copyright infringement claims have two basic elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quotation marks and citation omitted). A plaintiff suing for copyright infringement must identify with specificity which work or works were copied. *TVB Holdings USA Inc. v. Enom Inc.*, No. SACV 13-624-JLS (DFMx), 2014 WL 12581778, at *3 (C.D. Cal. Jan. 6, 2014).

INC identifies twelve different works, including hymnals and hymns, for which it has sought copyright registration from the United States Copyright Office, and has attached to the complaint six registrations issued by the United States Copyright Office. *See* Compl. ¶¶ 24, 53 and Exh. A. However, Claim 2 does not identify which Defendant is alleged to have infringed which particular copyright. Claim 2 alleges only that "Defendants and its members, without the authorization, consent or approval of Plaintiff, copied the arrangement, order and manner of INC's

11

worship services," and "used, posted and published INC's hymns which are original works of authorship belonging to INC." Compl. ¶ 52. The earlier paragraphs of the complaint allege that certain Defendants used or portrayed INC's "copyrighted material" without matching up any particular Defendant with any particular work.

Defendants argue that Claim 2 is subject to dismissal on the additional ground that use of a musical work in the course of religious worship is exempted from copyright protection. *See* 17 U.S.C. § 110(3) (exempting from copyright protection "performance of a nondramatic literary or musical work or of a dramatico-musical work of a religious nature, or display of a work, in the course of services at a place of worship or other religious assembly"). However, the Ninth Circuit has characterized the privilege accorded religious uses as "narrowly limited." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000). Without more specificity regarding which copyrighted material was used, and the circumstances of that use, the Court cannot determine whether the exemption applies in this case.

Defendant's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 2.

### 3. Unfair Competition (Claims 5 and 6)

To the extent that Claims 5 and 6, for statutory and common law unfair competition, are based on Defendants' alleged infringement of INC's trademarks and copyrights, they are subject to dismissal for the same lack of specificity that requires dismissal of the trademark and copyright claims. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) (dismissal of unfair competition claim was proper where dismissal of the underlying Lanham Act claim was proper).

As noted above, allegations regarding Defendants' public comment and protest activities are incorporated by reference into Claims 5 and 6. *See* Compl. ¶¶ 66, 71. To the extent those allegations form the basis for INC's claims, it is unclear whether INC is proceeding under the unlawful, unfair, or fraud prong with respect to its UCL claim, or precisely how the allegations of public comment and protest support its common law unfair competition claim.

Defendant's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 5 and 6.

#### 4. **Breach of Confidential Relationship (Claim 7)**

Claim 7 is titled "Breach of Confidential Relationship." "Breach of a confidential relationship is established when: (1) one party is vulnerable to the other; (2) this vulnerability results in the empowerment of the stronger party; (3) empowerment has been solicited or accepted by the stronger party; and (4) prevents the weaker party from effectively protecting itself." *Fitzpatrick v. Fitzpatrick*, No. 2:12-CV-2938 GEB AC, 2014 WL 2197610, at *8 (E.D. Cal. May 27, 2014), report and recommendation adopted, No. 2:12-CV-2938 GEB AC, 2014 WL 3058455 (E.D. Cal. July 3, 2014). INC does not allege facts relevant to these elements, however, as INC does not allege that it was vulnerable to a stronger party and therefore was unable to protect itself in some way.

It appears that INC may have intended to assert a claim for "breach of confidence," as INC's allegations more closely match up to the elements of that claim. To prevail on a claim for breach of confidence, a plaintiff must show that: (1) the plaintiff conveyed confidential and novel information; (2) the defendant knew that the information was being disclosed in confidence; (3) there was an understanding between the plaintiff and the defendant that the confidence be maintained; and (4) there was disclosure or use in violation of the understanding. *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 903 (9th Cir. 1987). "Constructive notice of confidentiality is not sufficient." *Id.*

INC alleges in the most general of terms that "Plaintiff entrusted confidential information to Defendants when Defendants were ministers, officers and members of INC," and that "Defendants used this confidential information to their advantage to assist themselves on legal issues and to defame INC online." Compl. ¶ 77. These allegations are not sufficient to meet the particularity requirements of *Iqbal* and *Twombly*, as they do not provide any notice to Defendants as to what information was allegedly conveyed and disclosed.

Defendant's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 7.

#### 5. **Libel (Claim 8)**

Claim 8 is for libel, which is "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred,

contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.'' Cal. Civ. Code § 45. The elements of a libel claim are "(1) the intentional publication of a fact; (2) that is false; (c) unprivileged; and (4) has a natural tendency to injure or cause special damage.'' *Vachani v. Yakovlev*, No. 15-CV-04296-LB, 2016 WL 7406434, at *6 (N.D. Cal. Dec. 22, 2016) (quotation marks and citation omitted).

Claim 8 alleges that "Defendants have publicly accused Plaintiffs of lying about the origin and source of goodwill associated with INC and the relationship between the parties"; "Defendants have authorized, directed, endorsed or approved the lies and false statements regarding INC"; and "Defendants are intentionally disparaging the reputation and goodwill of INC and the services offered by INC, causing pecuniary damage to INC, including, but not limited to lost donations of INC members." Compl. ¶¶ 83-85. These allegations do not allege what facts were published, or which Defendants published them.

Defendant's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 8.

## IV. ORDER

For the reasons discussed above,

(1) Ruling on Defendants' anti-SLAPP motion is DEFERRED pending amendment of the complaint to provide Plaintiff with the opportunity to either eliminate its allegations of protected activity or allege claims based on protected activity with adequate specificity. The anti-SLAPP motion is TERMINATED WITHOUT PREJUDICE to renewal, if appropriate, after the filing of INC's first amended complaint (if any).

(2) Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to all claims of the complaint.

(3) Any amended complaint shall be filed on or before October 17, 2018. Leave to amend is limited to the deficiencies identified in this order. Plaintiff may not add new claims or parties without obtaining prior leave of the Court.

Dated: September 26, 2018

BETH LABSON FREEMAN
United States District Judge