**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IGLESIA NI CRISTO,<br><br>        Plaintiff,<br><br>    v.<br><br>LUISITO E. CAYABYAB, et al.,<br><br>        Defendants. | Case No.  18-cv-00561-BLF<br><br>**ORDER DENYING ANTI-SLAPP MOTIONS; AND GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS, WITH LEAVE TO AMEND**<br><br>[Re:  ECF 58, 59, 60, 73] |

Plaintiff Iglesia Ni Cristo ("INC") is a non-profit religious corporation that has congregations throughout the United States and numerous other countries.  INC sues eleven of its former ministers, officers, and members ("Individual Defendants"), claiming that after expulsion from INC the Individual Defendants formed Defendant H2O Now USA ("H2O") and continued holding worship services as though still affiliated with INC.  The Individual Defendants and H2O allegedly use INC's trademarked and copyrighted materials, including INC's Seal, Executive Seal, Flag, and hymns, in worship services.  INC claims that Defendants' conduct violates federal trademark law, copyright law, and state unfair competition law.

This order addresses four motions filed by two sets of Defendants, the first set comprising H2O, Lionel Roque Dela Uso, Allan Monte De Ramos, Jesle Llaban Kuizon, Edwin Lionel R. Mora, and Allan Villanueva ("H2O Defendants"), and the second set comprising Luisito E. Cayabyab and Rolando Dizon, Jr.  Each set of Defendants has filed a special motion to strike under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, and a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

For the reasons discussed below, the anti-SLAPP motions are DENIED and the Rule 12(b)(6) motions are GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND.

United States District Court<br>Northern District of California

## I.    BACKGROUND

INC filed the complaint in this action on January 25, 2018.  *See* Compl., ECF 1.  Several Defendants responded by filing an anti-SLAPP motion and a Rule 12(b)(6) motion.  *See* Prior Motions, ECF 14, 15.  With respect to the anti-SLAPP motion, the Court determined that the complaint presented "mixed" claims based in part on activity protected by the anti-SLAPP statute and in part on unprotected activity.  *See* Prior Order at 6-7, ECF 50.  INC indicated that it had intended to sue only for unprotected activity, specifically Defendants' unlawful use of its trademarks and copyrights.  *Id.*  The Court deferred consideration of the anti-SLAPP motion and granted the Rule 12(b)(6) motion with leave to amend, thus giving INC an opportunity to amend its pleading to either eliminate allegations of protected activity or clarify its claims based on protected activity.  *Id*. at 8, 14.  The Court terminated the anti-SLAPP motion without prejudice to renewal, if appropriate, after INC's amendment of its pleading.  *Id*. at 14.

INC filed the operative first amended complaint ("FAC") on October 17, 2018, alleging the following facts:  INC is a non-profit religious corporation that was founded in the Philippines in 1914 and now has congregations in the United States and approximately 147 other countries and territories.  FAC ¶ 16.  INC has obtained federal trademark registrations of its Seal, Executive Seal, and Flag from the United States Patent and Trademark Office ("PTO").  FAC ¶¶ 21-23.  INC has applied to the United States Copyright Office for copyrights on several works, including hymns.  FAC ¶ 24.

In 2015, a group of expelled members of INC registered a nonprofit mutual benefit corporation called Restore the Church Group.  FAC ¶ 31.  The name was changed almost immediately to Restore the Church Fund.  FAC ¶ 32.  The registered corporate purpose was "creating an organization of INC members with a mutual interest of restoring our church to its original doctrine."  FAC ¶ 32.  In January 2015, the name of the church changed yet again to H2O Now USA, and the articles of incorporation were amended to reflect that:  "The specific purpose of this corporation is to create an association of former INC members whose purpose is to provide financial, legal and general assistance to those indigent individuals and groups who are currently victims of religious and/or political oppression and persecution worldwide."  FAC ¶ 32.

United States District Court
Northern District of California

United States District Court
Northern District of California

According to INC, H2O conducts worship services and online worship services under INC's name and using INC's trademarked and copyrighted materials.  FAC ¶¶ 32-35.  INC members have attended H2O's worship services and made monetary offerings in the belief that the services were conducted by INC.  FAC ¶ 36.  H2O maintains a number of websites that display INC's official Seal and Flag, including the websites *www.incsilentnomore.com*, *www.incdefenders.org*, *www.incdefendersmedia.com*, *www.incfromtheedge.wordpress.com*, and *www.increflections.wordpress.com*.  FAC ¶¶ 38-39.  H2O has published several videos on YouTube showing some of its members conducting worship services using INC's trademarked and copyrighted materials.  FAC ¶ 40.  Some Individual Defendants – Samson, Deocampo, Cayabyab, Dizon, Garcia, Kuizon, Villanueva, Ramos, Dela Uso, and Mora – post blogs under the pseudonym Antonio Evangelista, purporting to be part of INC and using INC's trademarked and copyrighted materials.  FAC ¶ 42.  H2O members have misrepresented H2O's status as being part of INC in order to gather INC members at houses, encourage them to attend H2O bible studies and worship services, and sell them t-shirts and other products.  FAC ¶ 44.

INC sues H2O and the Individual Defendants for:  (1) false designation of origin under the Lanham Act, 15 U.S.C. § 1125; (2) copyright infringement; (3) federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114[1]; (4) unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*; and (5) unfair competition under California common law.

## II.    ANTI-SLAPP MOTIONS

Two anti-SLAPP motions are before the Court, one brought by the H2O Defendants (H2O, Dela Uso, Ramos, Kuizon, Mora, and Villanueva) and the other by Individual Defendants Cayabyab and Dizon.  The Court first discusses the applicable legal standard and then it addresses each of the anti-SLAPP motions in turn.  The Court notes that the California Supreme Court's decision in *FilmOn.com, Inc. v. Doubleverify, Inc.*, 7 Cal. 5th 133 (2019), was issued after completion of the briefing and less than two weeks before oral argument.  The Court discussed the

---

[1] While it does not cite 15 U.S.C. § 1114 specifically, Claim 3 asserts infringement of registered trademarks.  Infringement of registered trademarks is governed by § 1114, and the prayer cites § 1114 when requesting relief for federal trademark infringement.  Accordingly, the Court presumes that Claim 3 is brought pursuant to § 1114.

potential impact of *FilmOn.com* at the hearing, and no party requested leave to file supplemental briefing.

### A.      Legal Standard

"The Legislature enacted Code of Civil Procedure section 425.16 to address so-called strategic lawsuits against public participation (SLAPP)." *FilmOn.com*, 7 Cal. 5th at 139.  "This anti-SLAPP statute makes available a special motion to strike meritless claims early in litigation – but only if the claims arise from acts in furtherance of a person's 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" *Id.* (quoting Cal. Civ. Proc. Code § 425.16(b)).

A defendant in federal court may bring an anti-SLAPP motion with respect to California state law claims asserted under either diversity jurisdiction or supplemental jurisdiction. *Jen v. City & Cty. of San Francisco*, No. 15-CV-03834-HSG, 2016 WL 3669985, at *11 (N.D. Cal. July 11, 2016).  The anti-SLAPP statute does not apply to claims asserted under federal law. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

"The analysis of an anti-SLAPP motion proceeds in two steps." *Barry v. State Bar of California*, 2 Cal. 5th 318, 321 (2017) (quotation marks and citation omitted).  "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).  "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." *Id.*  Only "[i]f the court determines that relief is sought based on allegations arising from activity protected by the statute" is the second step reached. *Id.*

At step two, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396.  The court "will review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018).  "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly

United States District Court
Northern District of California

1    stated." *Id.* at 834. "[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of

2    a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Planned Parenthood*,

3    890 F.3d at 834. Under that standard, "[t]he court, without resolving evidentiary conflicts, must

4    determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to

5    sustain a favorable judgment." *Baral*, 1 Cal. 5th at 396. "[I]n such a case, discovery must be

6    allowed, with opportunities to supplement evidence based on the factual challenges, before any

7    decision is made by the court." *Planned Parenthood*, 890 F.3d at 834.

8         If the plaintiff ultimately fails to meet its burden at the second step, the claim based on

9    protected activity is stricken and "[a]llegations of protected activity supporting the stricken claim

10   are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff

11   has shown a probability of prevailing." *Baral*, 1 Cal. 5th at 396.

12       **B.**     **Anti-SLAPP Motion Brought by H2O Defendants**

13        The H2O Defendants have filed an anti-SLAPP motion with respect to INC's two state law

14   claims, Claim 4 for unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq*., and Claim 5

15   for common law unfair competition. The H2O Defendants contend that those claims arise from

16   alleged acts of Defendants in furtherance of their right of petition or free speech and that INC has

17   not established a probability of prevailing on the claims. In response, INC asserts that it has

18   omitted all allegations of conduct implicating Defendants' right of petition or free speech pursuant

19   to the guidance offered in the Court's order addressing Defendants' first-round anti-SLAPP and

20   Rule 12(b)(6) motions. INC contends that, as amended, the state law claims in the FAC are

21   limited to Defendants' unprotected use of INC's trademarks. In the event the Court disagrees,

22   INC argues that the anti-SLAPP motion nonetheless should be denied because INC has established

23   a probability of success on the merits of its state law claims.

24       **1.**     **Evidence and Evidentiary Objections**

25        Before turning to those arguments, the Court addresses the evidence submitted by both

26   sides in connection with the H2O Defendants' anti-SLAPP motion. Under the framework

27   discussed above, the Court must determine at step one whether the H2O Defendants have

28   identified allegations of protected activity in the FAC that support INC's state law claims. *See*

*Baral*, 1 Cal. 5th at 396.  No evidence is necessary or relevant to that determination.

If step two is reached, the Court must determine whether INC has demonstrated that each challenged claim based on protected activity is legally sufficient and factually substantiated.  *See Baral*, 1 Cal. 5th at 396.  The H2O Defendants have brought a facial challenge to the legal sufficiency of INC's state law claims.  *See* H2O Anti-SLAPP Motion at 6, ECF 58.  Thus, any step two determination must be conducted under the Rule 12(b)(6) standard.  *See Planned Parenthood*, 890 F.3d at 834.  Under the Rule 12(b)(6) standard, the Court may consider only the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice.  *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).  Neither side has asked the Court to consider evidence under the judicial notice rule or incorporation by reference doctrine.  Because the parties' evidence falls outside the scope of matters that may be considered under the Rule 12(b)(6) standard, the Court has not considered the evidence or the objections thereto.

At the hearing, counsel for the H2O Defendants acknowledged that the anti-SLAPP motion was brought as a facial attack to the sufficiency of INC's claims.  *See* Hrg. Tr. 23:20-24:2, ECF 109.  Counsel indicated, however, that he decided to switch over to a factual attack in the reply brief.  *See* Hrg. Tr. 24:2-6.  The Court advised counsel that it would not apply the summary judgment standard to the H2O Defendants' motion, because the  motion did not give INC fair notice that the H2O Defendants were asserting a factual challenge.  *See* Hrg. Tr. 24:5-26:6.  The Court stated that it would hold the H2O Defendants to the Rule 12(b)(6) standard specified in their motion.  *See id.*

## 2.     Step One Analysis

Turning to the parties' arguments, the Court first considers whether the H2O Defendants have identified allegations of protected activity that support INC's state law unfair competition claims.  As used in the anti-SLAPP statute, protected activity includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing

United States District Court
Northern District of California

1

made in a place open to the public or a public forum in connection with an issue of
public interest, or (4) any other conduct in furtherance of the exercise of the
constitutional right of petition or the constitutional right of free speech in
connection with a public issue or an issue of public interest.

2

3   Cal. Civ. Proc. Code § 425.16(e).  The H2O Defendants' motion does not specify which of these

4   subsections the Court should apply.  Subsections (1) and (2) plainly are inapplicable to the

5   allegations of the FAC.  The Court therefore presumes that the H2O Defendants contend INC's

6   state law claims are based on one or more statements "made in a place open to the public or a

7   public forum in connection with an issue of public interest" under § 425.16(e)(3), or "other

8   conduct in furtherance of the exercise of the constitutional right of petition or the constitutional

9   right of free speech in connection with a public issue or an issue of public interest" under §

10  425.16(e)(4).

11          In *FilmOn.com*, the California Supreme Court addressed the "in connection with" language

12  of subsection (e)(4), observing that California appellate courts had "struggled – understandably –

13  to articulate the requisite nexus between the challenged statements and the asserted issue of public

14  interest." *FilmOn.com*, 7 Cal. 5th at 149.  The court held that the inquiry "calls for a two-part

15  analysis rooted in the statute's purpose and internal logic."  *Id*.  First, a court must ask what issue

16  of public interest is implicated by the speech in question.  *Id*.  Second, the court must "ask what

17  functional relationship exists between the speech and the public conversation about some matter of

18  public interest."  *Id*. at 149-50.  "[I]t is not enough that the statement refer to a subject of

19  widespread public interest; the statement must in some manner itself contribute to the public

20  debate."  *Id*. at 150 (internal quotation marks and citation omitted).  When determining whether

21  the statement contributes to the public debate, the court must consider the "context – including

22  audience, speaker, and purpose."  *Id*. at 152.

23          While the above analysis addressed the "in connection with" language of  § 425.16(e)(4),

24  the analysis would seem to extend with equal force to the "in connection with" language of §

25  425.16(e)(3).  Accordingly, in determining whether the H2O Defendants have established that

26  INC's state law claims are based at least in part on statements or conduct "in connection with" an

27  issue of public interest, the Court must ask first what issue of public interest is implicated, and

28  second whether the alleged statements or conduct contributed to the public debate.

United States District Court
Northern District of California

1    INC's state law unfair competition claims are based on Defendants' alleged trademark

2    infringement and false designation of origin under the Lanham Act.  *See* FAC ¶ 92 (alleging with

3    respect to statutory UCL claim that "Defendants willfully intended to trade on the strength,

4    reputation and goodwill of INC, to mislead the public with wrongful use of INC's Trademarks,

5    and to cause injury to INC"); ¶¶ 96-97 (alleging with respect to common law unfair competition

6    claim that "Defendants willfully intended to trade on the strength and reputation of INC and its

7    Trademarks, to cause injury to INC, and to pass off its services as those of Defendants").  INC

8    claims that Defendants falsely hold themselves out to be part of INC by using INC's name and

9    trademarked Seal, Executive Seal, and Flag, alleging:  "Specifically, Defendant H20 Now uses

10    Plaintiff INC's Seal (Exhibit B), Flag (Exhibit C), and Executive Seal (Exhibit D) in its worship

11    services and gatherings, websites, social media accounts, and pamphlets in an attempt to confuse

12    the public into believing it is INC."  FAC ¶ 76.  INC alleges that numerous H2O members, who

13    are identified by name, have conducted worship services while purporting to be INC officiants and

14    showing INC's trademarked Flag, Seal, and Executive Seal.  FAC ¶¶ 77-88.  The FAC contains

15    links to, and descriptions of, videos of such worship services.  FAC ¶ 77.

16    On their face, INC's allegations of trademark infringement and false designation of origin

17    do not encompass protected speech under the standard set forth above.  The H2O Defendants

18    argue that protected activity is implicated by the FAC's references to websites allegedly operated

19    by H2O and its members, asserting that "The H2O Now Websites indisputably constitute a public

20    forum for purposes of the anti-SLAPP statute," and that "the blogs on the H2O Now Websites

21    regarding alleged corruption at INC concern a 'public issue' or an 'issue of public interest.'"  H2O

22    Anti-SLAPP Motion at 6, ECF 58.  Noting that the Court concluded that references to such

23    websites in the original complaint implicated protected activity, the H2O Defendants request that

24    the Court reach the same conclusion with respect to the FAC.

25    Defendants' argument completely ignores INC's amendments to its pleading.  In its order

26    addressing INC's original complaint, the Court highlighted allegations regarding blog entries,

27    rumors, and confidential information about INC posted on certain websites, including

28    *www.incsilentnomore.com*, *www.incdefenders.org*, and *www.incdefendersmedia.com*.  *See* Prior

Order at 5-6, ECF 50.  The Court found such public commentary, and related public protest, to be protected activity under the anti-SLAPP statute.  *See id.*  As framed in the FAC, however, INC's state law claims are not based on any public commentary that may be posted on the websites. INC's state law claims are based on Defendants' alleged use of INC's trademarks for the purpose of masquerading as INC while conducting worship services in the name of INC.  The websites are referenced only in the context of identifying Defendants' use of INC's trademarked and copyrighted materials.  *See, e.g.,* FAC ¶¶ 38-39.  Under *FilmOn.com*, step one of the anti-SLAPP analysis is not satisfied by the mere mention of websites that contain commentary on an issue of public interest.  The anti-SLAPP movant must show that the speech upon which the challenged claim is based implicates an issue of public interest *and* contributes to the public debate.  The H2O Defendants have not shown, and the Court does not perceive, how the conduct upon which INC's state law claims are based – Defendants' unlawful use of INC's trademarks – implicates an issue of public interest or contributes to public debate regarding INC.

In their reply, the H2O Defendants direct the Court to allegations regarding H2O's corporate filings, including H2O's corporate purpose:  "to create an association of former INC members whose purpose is to provide financial, legal and general assistance to those indigent individuals and groups who are current victims of religious and/or political oppression and persecution."  *See, e.g.,* FAC ¶¶ 13, 32.  Defendants argue that to the extent INC's state law claims are based on the use of INC's name in H2O's corporate filings, the claims are based on an issue of public debate.  That argument is unpersuasive because INC's state law claims are not based on H2O's corporate filings.  The allegations regarding H2O's corporate filings appear in the sections of the FAC identifying the parties and providing the factual background.  *See id.*  They are not referenced in INC's Lanham Act claims or unfair competition claims.  The Court notes that the H2O Defendants' argument regarding corporate filings was made in response to INC's assertion in its opposition brief that H2O's corporate filings constitute trademark infringement.  *See* INC Opp. at 2, ECF 99.  While INC's argument muddied the waters on this point, the Court concludes that it is clear on the face of the FAC that the state law claims are not grounded in H2O's corporate filings.

1    Having determined at step one of the anti-SLAPP inquiry that the H2O Defendants have

2    not identified allegations of protected activity which support INC's state law claims, the Court

3    need not reach step two of the inquiry.  The H2O Defendants' anti-SLAPP motion is DENIED.

4        **C.      Anti-SLAPP Motion Brought by Defendants Cayabyab and Dizon**

5        Individual Defendants Cayabyab and Dizon also have filed an anti-SLAPP motion with

6    respect to INC's state law unfair competition claims.  Defendants contend that those claims arise

7    from alleged acts of Defendants in furtherance of their right of petition or free speech on matters

8    of public interest, and that INC has not established a probability of prevailing on the claims.  In

9    opposition, INC asserts that it has omitted all allegations of protected activity in compliance with

10   the Court's prior order and that in any event it has established a probability of success on the

11   merits of its state law claims.

12        **1.      Evidence**

13       Both sides have submitted evidence in connection with the anti-SLAPP motion brought by

14   Defendants Cayabyab and Dizon.  The motion does not specify whether it is a challenge to the

15   legal sufficiency of INC's state law claims under the Rule 12(b)(6) standard, or a challenge to the

16   factual sufficiency of the claims under the summary judgment standard.  *See* Cayabyab/Dizon

17   Anti-SLAPP Motion at 2-3, 7-10, ECF 73.  Because Cayabyab and Dizon have attached

18   declarations to their motion, the Court presumes that they assert a challenge to the factual

19   sufficiency of INC's state law claims.  Under the applicable summary judgment standard, the

20   Court may consider evidence extrinsic to the pleadings at step two of the anti-SLAPP analysis.

21   For the reasons discussed below, however, the anti-SLAPP motion is subject to denial at step one.

22   Because the Court need not and does not reach step two, the Court has not considered the parties'

23   evidence or evidentiary objections thereto.

24        **2.      Step One Analysis**

25       At step one, the Court considers whether Defendants Cayabyab and Dizon have identified

26   allegations of protected activity that support INC's state law unfair competition claims.

27   Defendants point to the FAC's allegations that they operate several websites, including

28   *www.incsilentnomore.com*, *www.incdefendersmedia.com*, and *www.incdefenders.org*.  *See* FAC ¶¶

United States District Court
Northern District of California

10

United States District Court
Northern District of California

2, 4.  They also cite the Court's prior order concluding that allegations regarding the websites implicated protected activity.  *See* Prior Order at 5-6, ECF 50.  Cayabyab and Dizon argue that, despite INC's efforts to narrow its claims to allegations of unlawful trademark infringement, "INC cannot escape the fact that the Websites and related *blogs* do contain material that the Court has previously found amount to 'public comment' which are protected activities under California's Anti-SLAPP statute."  Cayabyab/Dizon Anti-SLAPP Motion at 5, ECF 73.

Defendants' position is unsupported by the law.  Under *FilmOn.com*, the anti-SLAPP movant must show that the speech upon which the challenged claim is based implicates an issue of public interest *and* contributes to the public debate.  *FilmOn.com*, 7 Cal. 5th at 149-50.  "[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate."  *Id*. at 150 (internal quotation marks and citation omitted).  Thus, the FAC's reference to websites which contain public commentary about INC is insufficient to bring the state law claims within the scope of the anti-SLAPP statute where INC's claims are not based on such commentary.  The Court must consider the context in which the websites are referenced.  *See id*. at 152.  As framed in the FAC, the allegations regarding the websites are limited to identifying examples of Defendants' use of INC's trademarked and copyrighted materials.

Cayabyab and Dizon argue that use of trademarks in a blog or post criticizing the trademark holder can constitute protected speech, relying on *Ocean's Eleven Casino v. Anders*, No. D063269, 2014 WL 1864487 (Cal. Ct. App. May 9, 2014).  *Ocean's Eleven* is unpublished and noncitable, and therefore will not be addressed by this Court.  With respect to the substance of Defendants' argument, however, the Court agrees that use of INC's trademarks for the purpose of criticizing INC could constitute protected speech under the anti-SLAPP statute.  *See FilmOn.com*, 7 Cal. 5th at 152 (When determining whether the statement contributes to the public debate, the court must consider the "context – including audience, speaker, and purpose.").  However, nothing in the FAC suggests that INC's claims are based on use of its trademarks in the context of public commentary.  To the contrary, the FAC has been narrowed substantially from the original complaint, such that INC's state law claims are based not on any criticism of INC but rather on

1   Defendants' use of INC's trademarks to masquerade as INC.  Defendants have made no showing

2   that their use of INC's trademarks in *that* context contributes to any public debate about INC.

3          The Court therefore concludes at step one of the anti-SLAPP inquiry that Cayabyab and

4   Dizon have not identified allegations of protected activity supporting INC's state law claims.  The

5   anti-SLAPP motion brought by Cayabyab and Dizon is DENIED.  Because the motion is denied at

6   step one, the Court need not reach step two of the anti-SLAPP inquiry.

7   **III.   RULE 12(b)(6) MOTIONS**

8          Two Rule 12(b)(6) motions are before the Court, one brought by the H2O Defendants and

9   the other by Individual Defendants Cayabyab and Dizon.  Both motions seek dismissal of all

10  claims of the FAC.  The two motions are substantially similar and therefore are addressed

11  together.  The Court first discusses the applicable legal standard and then it addresses the parties'

12  arguments with respect to INC's claims.

13         **A.      Legal Standard**

14         "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

15  claim upon which relief can be granted tests the legal sufficiency of a claim."  *Conservation Force*

16  *v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted).

17  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual

18  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

19  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

20  claim is facially plausible when it "allows the court to draw the reasonable inference that the

21  defendant is liable for the misconduct alleged."  *Id.*

22         **B.      Analysis**

23         The Court dismissed the claims of the original complaint in a prior written order which

24  highlighted the deficiencies in INC's trademark, copyright, and state law claims.  *See* Prior Order,

25  ECF 50.  The Court finds that INC has addressed many of those deficiencies in the FAC by

26  dropping certain claims and providing more specificity as to others.  As discussed below,

27  however, some pleading defects remain.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.      Trademark (Claims 1 and 3)

INC asserts two claims relating to its trademarks, Claim 1 for false designation of origin under 15 U.S.C. § 1125, and Claim 3 for trademark infringement under 15 U.S.C. § 1114.  The Court previously dismissed both claims with leave to amend, finding that INC had failed to describe Defendants' use of its trademarks with sufficient particularity and had failed to allege that Defendants had used the marks in commerce.  *See* Prior Order at 9-10, ECF 50.  Defendants argue that those deficiencies have not been cured in the FAC.  INC argues to the contrary.

### a.      Claim 3 for Trademark Infringement

Taking the trademark claims in reverse order, the Court concludes that Claim 3 for trademark infringement is adequately alleged.  "To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that (1) it owns the trademark at issue; (2) the defendant used in commerce without authorization any reproduction, counterfeit, copy, or colorable imitation of the mark in connection with the sale, offering for sale, distribution, or advertising of any goods and services; and (3) the defendant's use of the mark is likely to cause confusion, cause mistake, or deceive."  *United States Futsal Fed'n v. USA Futsal LLC*, No. 17-CV-04206-LB, 2018 WL 2298868, at *10 (N.D. Cal. May 21, 2018).

### i.      Ownership of Trademark

With respect to the first element, ownership, INC alleges that it has obtained federal trademark registrations of its Seal, Executive Seal, and Flag from the PTO. FAC ¶ 73.  "Federal registration provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is a protectable mark."  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).  Defendants do not challenge INC's allegations that it owns trademarks on its Seal, Executive Seal, and Flag.

Defendants do point out that INC asserts in its opposition briefs that it has a registered trademark in its name, but that no such registration is alleged in the FAC.  Similarly, Defendants note that the FAC refers to Defendants' use of INC's "logo" when no such logo is identified.  *See, e.g.*, FAC ¶¶ 2, 4, 6, 27, 28.  While the references to a trademarked name and to an unidentified logo are somewhat confusing, those references do not detract from INC's trademark infringement

13

1    claim based on its Seal, Executive Seal, and Flag.  The Court's consideration of the remaining

2    elements of a § 1114 claim is limited to those marks.

3                              **ii.      Use in Commerce**

4           The second element, unauthorized use in commerce, has two aspects.  First, the plaintiff

5    must show that the defendant either used the trademark in interstate commerce – that is, caused

6    goods or services to enter interstate commerce – or that the defendant used the trademark in

7    intrastate commerce in a manner that affects interstate commerce.  *See Thompson Tank & Mfg.*

8    *Co. v. Thompson*, 693 F.2d 991, 993 (9th Cir. 1982) (As used in the Lanham Act, "commerce"

9    includes both interstate commerce and "intrastate commerce which 'affects' interstate

10   commerce.").  Second, the plaintiff must show that the defendant used the trademark "in

11   connection with a commercial transaction in which the trademark is being used to confuse

12   potential consumers."  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005).

13   Defendants argue that neither requirement is met here.

14          With respect to the interstate commerce requirement, Defendants are alleged to have used

15   INC's registered trademarks on publicly accessible websites and in worship services which are

16   shown in videos posted online.  *See* FAC ¶¶ 77-88.  "A website, transmitted worldwide over the

17   Internet, falls within the scope of commerce lawfully regulated by Congress because the Internet

18   has been deemed an 'instrumentality and channel of interstate commerce.'"  *Stanislaus Custodial*

19   *Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n of Stanislaus Cty.* ("*Stanislaus II*"), No. CV F 09-

20   1988 LJO SMS, 2010 WL 2218813, at *5 (E.D. Cal. June 1, 2010).  The interstate commerce

21   requirement therefore is satisfied.

22          Defendants argue to the contrary, citing an earlier order in the *Stanislaus* case for the

23   proposition that INC has not alleged facts showing "how the defendant's conduct 'affects'

24   interstate commerce in which the plaintiff was engaged."  *Stanislaus Custodial Deputy Sheriffs'*

25   *Ass'n v. Deputy Sheriff's Ass'n of Stanislaus Cty.* ("*Stanislaus I*"), No. CV F 09-1988 LJO SMS,

26   2010 WL 843131, at *5 (E.D. Cal. Mar. 10, 2010).  The plaintiff, Stanislaus Custodial Deputy

27   Sheriffs' Association, was incorporated for the purpose of providing representation to its members

28   relating to employment and working conditions.  *Stanislaus I*, 2010 WL 843131, at *1.  The

United States District Court
Northern District of California

14

plaintiff's members included the Deputy Sheriff Custodial bargaining unit.  *Id*.  The defendant, Deputy Sheriff's Association of Stanislaus County, was incorporated to educate the public on various matters.  *Id*.  The plaintiff sued the defendant, asserting among other things that the defendant's confusing use of the plaintiff's trade name violated the § 1125 of the Lanham Act.  *Id*. at *3.  The district court dismissed the § 1125 claim as alleged in the first amended complaint, concluding that although the plaintiff had alleged facts showing its use of its name in interstate commerce via maintenance of a public website, the plaintiff had not alleged facts showing the *defendant's* conduct with respect to interstate commerce.  *Id*. at *5.  However, the district court found that the plaintiff cured that defect in the second amended complaint by alleging that the defendant had asserted in online postings that it had exclusive rights in the plaintiff's trade name. *Stanislaus II*, 2010 WL 2218813, at *6.  The district court concluded that allegations that the defendant "claims plaintiff's trade name as its own" were "sufficient to support a plausible claim that defendants infringed upon the trade name in interstate commerce."  *Id*.  Similarly, in the present case, Plaintiffs' allegations of Defendants' online use of INC's trademarks as their own is sufficient to meet the interstate commerce requirement.

With respect to the commercial transaction requirement, the Ninth Circuit has held that the requirement serves the Lanham Act's purpose "to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Bosley*, 403 F.3d at 676.  When determining whether the requirement is met, a court should inquire whether the defendant's use of the mark "was in connection with a sale of goods or services."  *Id.* at 677 (internal quotation marks omitted).  If it was not, the use was "noncommercial" and did not violate the Lanham Act.  *Id.*  "'[T]he use in connection with the sale of goods and services' requirement of the Lanham Act does not require any actual *sale* of goods and services."  *Id.*  "[T]he appropriate inquiry is whether [the defendant] offers *competing* services to the public."  *Id.*

INC alleges that "Defendant H2O Now uses Plaintiff INC's Seal (Exhibit B), Flag (Exhibit C), and Executive Seal (Exhibit D) in its worship services and gatherings, websites, social media accounts, and pamphlets in an attempt to confuse the public into believing it is INC."  FAC ¶ 76.

United States District Court
Northern District of California

1   Numerous videos of H2O worship services using INC's trademarks are identified and described.

2   *See* FAC ¶ 77.  INC alleges that H2O's use of INC's trademarks is intended to, and does, trick

3   people into attending H2O's worship services in the belief that they are INC's worship services.

4   *See* FAC ¶¶ 35-36.  Those allegations showing Defendants' use of INC's marks to offer

5   competing services are sufficient to meet the commercial transaction requirement even absent

6   allegations that either INC or Defendants charge for worship services.  *See Stanislaus II*, 2010 WL

7   2218813, at *8-9 ("To find that trademark is not protected unless a 'profit motive' is present

8   would be inconsistent with the numerous cases holding that non-profit names are protected.").

9        Even if a profit motive were required to satisfy the commercial transaction requirement,

10   INC alleges that Defendants' use of INC's trademarks results in actual profit to Defendants in the

11   form of monetary offerings from worshippers who believed they were attending INC services, and

12   sales of t-shirts and other products to worshippers who believed they were attending INC

13   sponsored gatherings.  FAC ¶¶ 36, 44.  Defendants argue without citation to authority that the

14   alleged use of INC's marks during worship services and on t-shirts "is simply not a commercial

15   transaction."  H2O Motion to Dismiss at 4, ECF 59.  Defendants' argument is unpersuasive, and

16   the Court finds that the commercial transaction requirement is met in this case.

17        Each Defendant is separately identified by name and alleged to have used INC's Flag,

18   Seal, and Executive Seal in H2O worship services.  FAC ¶¶ 78-88.  For example, INC alleges that

19   "Defendant Luisito E. Cayabyab has pretended to be an INC minister in officiating worship

20   services and gatherings with H20 Now, using INC's trademarked material including its name,

21   flag, seal, and executive seal in not only the videos above but in numerous H20 services,

22   gatherings and videos."  FAC ¶ 78.  Similarly, INC alleges that "Defendant Isaias T. Samson, Jr.

23   has pretended to be an INC minister in officiating worship services and gatherings with H20 Now,

24   using INC's trademarked material including its name, flag, seal, and executive seal in numerous

25   H20 services, gatherings and videos."  FAC ¶ 79.  The same allegations are made with respect to

26   Individual Defendants Dizon, Dela Uso, Ramos, Nemis, Kuizon, Garcia, Deocampo, Mora, and

27   Villanueva.  FAC ¶¶ 80-88.  The Court therefore concludes that INC's allegations satisfy the

28   commerce requirement as to all Defendants.

### iii.    Confusion

The third element of a § 1114 claim is that the defendant's use of the mark is likely to cause confusion, cause mistake, or deceive.  INC alleges that "Defendants' conduct has caused actual confusion among the members of INC, its followers and the general public regarding Defendants' affiliation with INC and the origin of its services."  FAC ¶ 75.  INC provides specific examples of such confusion, alleging that people attended H2O services and gatherings believing that they were INC services and gatherings.  *See* FAC ¶¶ 35-36, 44.  Those allegations satisfy the confusion requirement.  Defendants argue that INC has not plausibly alleged a likelihood of confusion because H2O's purpose is to create an association of former INC members.  The Court perceives no conflict between INC's allegations that H2O was created by former INC members and that H2O masquerades as INC.  Defendants argue that the alleged confusion caused by their conduct has not caused INC any injury.  However, INC alleges that Defendants' conduct has caused people to attend H2O worship services and gatherings instead of INC worship services and gatherings, and has caused loss of INC's valuable goodwill and reputation.  FAC ¶¶ ¶¶ 35-36, 57-58.

Accordingly, Defendants' motions to dismiss are DENIED as to Claim 3 for trademark infringement.

### b.    Claim 1 for False Designation of Origin

The elements of a claim for false designation of origin under § 1125 are virtually the same as the elements of a claim for trademark infringement under § 1114, although a § 1114 claim requires ownership of a registered trademark while a § 1125 claim does not.  *See United States Futsal Fed'n*, 2018 WL 2298868, at *10-12 (listing elements of both claims); *see also Monster Energy Co. v. Beastup LLC*,  No. 2:17-CV-01605-KJM-EFB, 2019 WL 3803679, at *3 (E.D. Cal. Aug. 13, 2019) ("A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114.").  Under § 1125, "a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, that (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods

or services in question." *United States Futsal Fed'n*, 2018 WL 2298868, at *12. Given its conclusion that those elements are satisfied with respect to the § 1114 claim, the Court would expect the same to hold true with respect to the § 1125 claim. However, because of differences in the way the two claims are framed, the Court finds the § 1125 claim to be well-pled as to only some of the Defendants. The Court addresses the § 1125 elements as follows, reorganizing them to align with the discussion of the § 1114 elements above.

### i. Word, False Designation, or Misleading Description

In Claim 1, INC alleges that Defendants have used INC's name and registered trademarks to represent that they continue to be part of, and associated with, INC. FAC ¶¶ 51, 53. Unlike Claim 3, however, Claim 1 does not contain a listing of each Defendant with allegations regarding that Defendant's use of INC's marks. Claim 1 is limited to allegations regarding "Defendants" as a whole. For example, Claim 1 alleges that "Defendants' representations of still being a part of INC, its history and goodwill is a false representation to the public, which causes confusion, mistake and deception as to the affiliation, connection and association of Defendants with INC." FAC ¶ 53. Similarly, Claim 1 alleges that "Defendants' wrongful use of INC's Trademarks in connection with the worship services provided by Defendants causes confusion, mistake and deception as to the affiliation, connection and association of Defendants with INC, and/or as to the origin, sponsorship and approval of Defendants' services and activities bearing INC's Trademarks." FAC ¶ 54.

Claim 1 does incorporate by reference all preceding allegations. The FAC alleges that H2O "started to conduct gatherings and offered worship services in different cities in California, on the east coast of the United States and in Canada under the name Iglesia Ni Cristo (Church of Christ)," and that H2O displays INC's trademarked Seal and Flag during those worship services. FAC ¶ 35. The FAC also alleges that Individual Defendants Cayabyab, Samson, Dizon, and Ramos portray themselves as ministers of INC and officiate over worship services in the name of INC. FAC ¶¶ 2-6. Those allegations are sufficient to show that Defendants H2O, Cayabyab, Samson, Dizon, and Ramos used "any word, false designation of origin, false or misleading description, or representation of fact" regarding the source of the worship services offered.

Claim 1 and the paragraphs incorporated by reference into Claim 1 do not contain the same degree of specificity with respect to Defendants Nemis, Kuizon, Garcia, Deocampo, Mora, and Villanueva.  The FAC alleges that Nemis "supports and maintains" websites on which INC's trademarked material is posted.  FAC ¶ 7.  Kuizon allegedly "attended and supports H2O gatherings, meetings and worship services where INC's name, logo, seal, and copyrighted materials were used," and that he "promotes and helps in the management and operation" of websites on which INC's trademarked material is posted.  FAC ¶ 8.  Garcia allegedly "helps in setting up and maintaining" websites containing INC's trademarked material.  FAC ¶ 9. Deocampo and Mora allegedly "actively promote and support" websites where INC's trademarked material is posted.  FAC ¶ 10.  Villanueva is alleged to have attended H2O worship services where INC's name and seal are used.  FAC ¶ 11.  INC has not cited, and the Court has not discovered, any authority suggesting that liability may be imposed under § 1125 based on such vague allegations.

### ii.     Use in Commerce

With respect to H2O and the Individual Defendants alleged to have conducted worship services in the name of INC (Cayabyab, Samson, Dizon, and Ramos), the interstate commerce and commercial transaction requirements are met for the same reasons those requirements are met with respect to the § 1114 claim.  With respect to Individual Defendants Nemis, Kuizon, Garcia, Deocampo, Mora, and Villanueva, Claim 1 does not allege facts showing "use," and therefore does not allege facts showing commercial use.

### iii.     Confusion

With respect to H2O and the Individual Defendants alleged to have conducted worship services in the name of INC (Cayabyab, Samson, Dizon, and Ramos), the element of confusion is satisfied for the same reasons that element is satisfied with respect to the § 1114 claim.

Defendants' motions to dismiss Claim 1 are GRANTED IN PART, WITH LEAVE TO AMEND, as to moving parties Kuizon, Mora, and Villanueva[2], and otherwise are DENIED.

---

[2] The other Individual Defendants as to whom the Court finds the § 1125 allegations insufficient are not moving parties with respect to the current motions.

United States District Court
Northern District of California

### 2.      Copyright (Claim 2)

Claim 2 is for infringement of INC's copyrights with respect to hymnals and hymns.  In its prior order, the Court dismissed the copyright claim after concluding that the complaint identified twelve different works, and six copyright registrations, but did not identify which Defendants infringed which copyright.  Defendants argue that INC has not cured this defect.  Defendants argue that the copyright claim is subject to dismissal on the additional grounds that INC has not alleged ownership of valid copyrights, and because INC alleges use of copyrighted hymns at worship services and thus falls within a statutory exception to liability.  INC argues that it has identified the works infringed by each Defendant, and that the statutory exception does not apply here.

"Copyright infringement claims have two basic elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quotation marks and citation omitted).  "Impelling prompt registration of copyright claims, 17 U.S.C. § 411(a) states that 'no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title.'" *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019) (quoting 17 U.S.C. § 411(a)).  The Supreme Court recently considered whether registration of a copyright has occurred "as soon as the claimant delivers the required application, copies of the work, and fee to the Copyright Office," or whether registration has been made "only after the Copyright Office reviews and registers the copyright." *Id*.  The Supreme Court concluded that "registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright." *Id*.  "Upon registration of the copyright, however, a copyright owner can recover for infringement that occurred both before and after registration." *Id*. at 886-87.

The FAC alleges that INC has applied for copyright registration of a number of works. FAC ¶ 24.  Under *Fourth Estate*, that allegation is insufficient to establish INC's ownership of those works for purposes of the Copyright Act.  INC alleges that it has obtained registrations of

1    six works, attached as Exhibit A to the FAC.  FAC ¶ 64.  However, Exhibit A contains receipts for

2    copyright applications, not evidence that registrations have issued.  *See* FAC ¶ 64 and Exh. A.

3    INC's copyright claim therefore is subject to dismissal for failure to allege ownership of a valid

4    copyright.  INC indicated at the hearing that it could amend to allege issuance of valid copyright

5    registrations.  The Court therefore will dismiss the copyright claim with leave to amend.

6         Defendants correctly assert that a plaintiff suing for copyright infringement must identify

7    with specificity which work or works were copied.  *See TVB Holdings USA Inc. v. Enom Inc.*, No.

8    SACV 13-624-JLS (DFMx), 2014 WL 12581778, at *3 (C.D. Cal. Jan. 6, 2014).  INC has

9    identified specific instances where Individual Defendants Dizon and Cayabyab used INC's hymns

10   in worship services shown on videos published to the Internet.  *See* FAC ¶ 67-69.  The Copyright

11   Act exempts from copyright protection "performance of a nondramatic literary or musical work or

12   of a dramatico-musical work of a religious nature, or display of a work, in the course of services at

13   a place of worship or other religious assembly."  17 U.S.C. § 110(3).  However, INC alleges that

14   the videos in question displayed the lyrics of the hymns in question, which arguably constitutes

15   distribution of the works falling outside the scope of the exemption.  *See Worldwide Church of*

16   *God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000).  Accordingly, with

17   respect to Defendants Dizon and Cayabyab, the Court finds the copyright claims to be adequately

18   alleged, except for the ownership issue addressed above.  The conduct of Dizon and Cayabyab

19   appears attributable to Defendant H2O as well, based on their roles in H2O.  *See* FAC ¶¶ 2, 4.

20        With respect to the other Individual Defendants, INC alleges only that they "participated in

21   the use and publishing of INC's copyrighted hymns in H2O worship services and online."  FAC ¶

22   70.  That allegation, which is wholly conclusory, is inadequate to show copyright infringement.

23        Based on these deficiencies, the motions to dismiss Claim 2 for copyright infringement are

24   GRANTED WITH LEAVE TO AMEND as to all Defendants.

### 3.    Unfair Competition (Claims 4 and 5)

26        Claims 4 is for unfair competition under California Business and Professions Code §

27   17200, and Claim 5 is for unfair competition under California common law.  Both claims are

28   based on Defendants' alleged violations of the Lanham Act.  *See* FAC ¶ 92 ("Defendants willfully

intended to trade on the strength, reputation and goodwill of INC, to mislead the public with wrongful use of INC's Trademarks, and to cause injury to INC."); ¶ 96 ("By engaging in the wrongful conduct described herein, Defendants willfully intended to trade on the strength and reputation of INC and its Trademarks, to cause injury to INC, and to pass off its services as those of Defendants."). "[T]he elements of California state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act." *Monster Energy*, 2019 WL 3803679, at *12 (internal quotation marks and citation omitted).

The Court previously dismissed INC's unfair competition claims because the underlying Lanham Act claims had not been adequately pled.  In light of the Court's conclusion that INC's trademark infringement claim under § 1114 is sufficiently pled as to all Defendants, the unfair competition claims are sufficient as well.  To the extent the unfair competition claims are based on INC's § 1125 claim, they are sufficient as to Defendants H2O, Cayabyab, Samson, Dizon, and Ramos.

Accordingly, the motions to dismiss Claims 4 and 5 for unfair competition are DENIED.

## IV.   ORDER

(1)   Defendants' anti-SLAPP motions are DENIED;

(2)   Defendants' Rule 12(b)(6) motions are GRANTED WITH LEAVE TO AMEND on Claim 1 for false designation of origin as to Defendants Kuizon, Mora, and Villanueva, GRANTED WITH LEAVE TO AMEND on Claim 2 for copyright infringement as to all defendants, and otherwise DENIED;

(3)   Any amended complaint shall be filed on or before September 13, 2019; and

(4)   Leave to amend is limited to the deficiencies identified in this order – Plaintiff INC may not add new parties or claims without prior leave of the Court.

Dated:  August 23, 2019

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

22