# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| IGLESIA NI CRISTO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>LUISITO E. CAYABYAB; ISAIAS T. SAMSON, JR.; ROLANDO DIZON, JR.; LIONEL ROQUE DE LA USO; ALLAN MONTE DE RAMOS; JERIEL NEMIS; JESLE LLABAN KUIZON; BERNARD GARCIA; LIEZL DIAZ-DEOCAMPO; EDWIN LIONEL R. MORA; ALLAN VILLANUEVA; and H2O NOW USA, a California Non-Profit Mutual Benefit Corporation,<br><br>　　　　Defendants. | Case No. 18-cv-00561-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 125] |

Plaintiff Iglesia Ni Cristo ("INC"), a non-profit religious corporation, sues eleven of its former ministers, officers, and members ("Individual Defendants") and the non-profit religious corporation they formed, Defendant H2O Now USA ("H2O"). INC claims that Defendants hold themselves out as affiliated with INC, using INC's trademarked name, Seal, Executive Seal, and Flag, and INC's copyrighted hymns, thus causing confusion to INC's members and to the public.

Before the Court is a motion for summary judgment filed on behalf of H2O and eight of the Individual Defendants (collectively, "Moving Parties"): Luisito E. Cayabyab ("Cayabyab"), Rolando Dizon, Jr. ("Dizon"), Lionel Roque De La Uso ("De La Uso"), Allan Monte De Ramos ("Ramos"), Jesle Llaban Kuizon ("Kuizon"), Liezl Diaz-DeoCampo ("DeoCampo"), Edwin Lionel R. Mora ("Mora"), and Allan Villaneuva ("Villanueva"). *See* MSJ, ECF 125. INC has filed opposition, and Moving Parties have filed a reply. *See* Opp., ECF 126; Reply, ECF 129. After the reply was filed, INC filed an administrative motion seeking leave to file the Declaration

of Restituto S. Lazaro, which was inadvertently omitted from Plaintiff's opposition, as well as a sur-reply brief. *See* Motion for Leave to File Sur-Reply, ECF 130. The Court granted INC leave to file the Lazaro declaration and denied leave to file a sur-reply brief. *See* Order Granting in Part Motion for Leave to File Sur-Reply, ECF 132.

The Court heard oral argument on February 27, 2020. At the start of the hearing, Moving Parties' counsel clarified that the motion had been brought on behalf of Defendant DeoCampo in error, as DeoCampo has filed for bankruptcy. The docket reflects that a Notice of Automatic Stay was filed with respect to DeoCampo on October 20, 2018. *See* Notice of Automatic Stay, ECF 54. In light of the automatic bankruptcy stay, the Court does not consider the motion with respect to DeoCampo.

For the reasons discussed below, the motion for summary judgment is GRANTED as to Defendants De La Uso, Ramos, Kuizon, Mora, and Villanueva, and GRANTED IN PART AND DENIED IN PART as to Defendants Cayabyab, Dizon, and H2O.

The remaining three Defendants, Isaias T. Samson, Jr. ("Samson"), Jeriel Nemis ("Nemis"), and Bernard Garcia ("Garcia"), have not appeared. Bernard Garcia was served after the hearing on the motion for summary judgment. *See* Proof of Service, ECF 134. The docket does not show that service of process has been effected on Samson and Nemis.[1] INC is granted thirty days to file proof of service on Samson and Nemis; failure to do so will result in dismissal of Samson and Nemis for failure to effect service of process as required under Federal Rule of Civil Procedure 4(m).

**I.    BACKGROUND**

INC filed the complaint in this action on January 25, 2018, alleging that Defendant H20 was formed by a group of ministers and members who were expelled from INC; Defendants hold themselves out as INC congregations, using INC's trademarked Seal, Executive Seal, and Flag, and INC's copyrighted hymns; and Defendants operate websites that publish rumors, unfounded

---

[1] On February 21, 2019, INC attempted to file an "Affidavit of Service for Summons" with respect to Nemis, which was rejected by the Clerk's Office. *See* ECF 86 and note following. INC never re-filed the purported proof of service with respect to Nemis.

2

allegations, accusations, and lies about INC, and expose confidential information about INC. *See* Compl., ECF 1. INC asserted claims for copyright and trademark infringement under federal law, and claims for unfair competition, breach of confidential relationship, and libel under California law. *See id.*

Several Defendants responded by filing an anti-SLAPP motion pursuant to California Code of Civil Procedure § 425.16, and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Motion to Dismiss, ECF 14; Anti-SLAPP Motion, ECF 15. Defendants asserted that they resigned or were expelled from INC after publicly criticizing INC for corruption within the church and lavish lifestyles maintained by INC officers. *See* Anti-SLAPP Motion, ECF 15. According to Defendants, this lawsuit was filed in retaliation for, and to chill, Defendants' public criticism of INC. *See id.* After determining that the complaint presented "mixed" claims based on both protected and unprotected activity, the Court deferred consideration of the anti-SLAPP motion and granted the Rule 12(b)(6) motion with leave to amend. *See* Order Deferring Ruling on Anti-SLAPP Motion, ECF 50.

INC filed a first amended complaint on October 17, 2020, dropping its state law claims for breach of confidential relationship and libel, and focusing on Defendants' alleged infringement of its copyrights and trademarks. *See* FAC, ECF 53. Several Defendants again filed anti-SLAPP and Rule 12(b)(6) motions. *See* Anti-SLAPP Motions, ECF 58, 73; Motions to Dismiss, ECF 59, 60. The Court denied the anti-SLAPP motions and granted the Rule 12(b)(6) motions in part, with leave to amend. *See* Order Denying Anti-SLAPP Motions, ECF 110.

The operative second amended complaint ("SAC") was filed on September 13, 2019, asserting claims for: (1) false designation of origin under the Lanham Act, 15 U.S.C. § 1125; (2) copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*; (3) trademark infringement under the Lanham Act, 15 U.S.C. § 1114[2]; (4) unfair competition under Cal. Bus. & Prof. Code § 17200; and (5) unfair competition under state common law. *See* SAC, ECF 111.

---

[2] While it does not cite 15 U.S.C. § 1114 specifically, Claim 3 asserts infringement of registered trademarks. Infringement of registered trademarks is governed by § 1114, and the prayer cites § 1114 when requesting relief for federal trademark infringement. Accordingly, the Court presumes that Claim 3 is brought pursuant to § 1114.

3

Claims 1, 3, 4 and 5, asserted against all Defendants, are grounded in Defendants' alleged use of INC's trademarks. Claim 1, for false designation of origin, alleges that Defendants' use of INC's name, Seal, Executive Seal, and Flag, has caused confusion to INC's members and to the general public regarding Defendants' affiliation with INC. SAC ¶¶ 52-55. Each Defendant is alleged to have used one or more of INC's trademarks in worship services, websites, social media accounts, and pamphlets. SAC ¶¶ 56-68. Claim 3, for trademark infringement, alleges that Defendants unlawfully have used INC's registered trademarks in its name, Seal, Executive Seal, and Flag. SAC ¶¶ 89-104. Claims 4 and 5, for unfair competition under Cal. Bus. & Prof. Code § 17200 and state common law, respectively, are based on Defendants' alleged use of INC's trademarks. SAC ¶¶ 107-110, 112-114.

Claim 2, asserted against Defendants H2O, Cayabyab, and Dizon, alleges that those Defendants infringed INC's copyrights in a number of hymns. INC alleges that H2O, Cayabyab, and Dizon used its copyrighted hymns in worship services, distributed the hymns in printed form to persons attending worship services, and posted the lyrics of the hymns on YouTube. SAC ¶¶ 79-86.

An answer was filed on behalf of Defendants H2O, De La Uso, Ramos, Kuizon, Mora, and Villanueva on September 26, 2019. *See* Answer, ECF 112. A separate answer was filed on behalf of Defendants Cayabyab and Dizon on September 27, 2019. *See* Answer, ECF 113.

Moving Parties now seek summary judgment with respect to all claims in the SAC.

**II. LEGAL STANDARD**

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle*, 627 F.3d at 387. "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*. "The court

4

1 must view the evidence in the light most favorable to the nonmovant and draw all reasonable

2 inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record

3 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

4 genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

**III. DISCUSSION**

The motion for summary judgment is quite straightforward. Moving Parties Cayabyab, Dizon, De La Uso, Ramos, Kuizon, Mora, and Villaneuva have submitted declarations denying use of INC's name, trademarks, or hymns since leaving INC. *See* Declarations, ECF 125-1 through 125-7. In his role as Chief Executive Officer of H2O, Cayabyab also denies H2O's use of INC's trademarks or hymns. Cayabyab Decl. ¶¶ 3-7, ECF 125-1. The single exception to these denials is Dizon's admission that he performed INC's hymns during worship services. *See* Dizon Decl. ¶ 4, ECF 125-4. However, Moving Parties argue that Dizon's performance of the hymns in the course of religious worship services did not violate the Copyright Act.

In opposition, INC contends that it has submitted a "mountain of evidence" establishing Defendants' culpability. Opp. at 1, ECF 126. Most of that evidence is submitted as exhibits to the Declaration of Nicole Goss, one of INC's attorneys in this case. *See* Goss Decl., ECF 126; Exhibits, ECF 126-1 through 126-6. INC also requests judicial notice of the contents of INC's "Our History" webpage. *See* Pl.'s RJN, ECF 127. In reply, Moving Parties object to the bulk of the exhibits attached to the Goss Declaration and to INC's request for judicial notice. Moving Parties assert that INC has not submitted any admissible evidence establishing the existence of material issues of fact for trial.

The Court first takes up Moving Parties' evidentiary objections and, in the context of that discussion, INC's request for judicial notice. Second, the Court addresses INC's comments at the hearing regarding ongoing discovery. Third, the Court addresses INC's failure to tab or separate its exhibits. Fourth, the Court evaluates the summary judgment motion with respect to INC's trademark-related claims. And fifth, the Court evaluates the motion with respect to INC's copyright claim.

**A. Moving Parties' Evidentiary Objections / INC's Request for Judicial Notice**

Moving Parties object to two categories of evidence submitted by INC, screenshots of online content, and certain witness declarations. Moving Parties also object to INC's request for judicial notice of its "Our History" webpage.

**1. Screenshots**

INC relies heavily on screenshots that appear to be taken from Moving Parties' social media pages, from YouTube videos, and from other websites, to prove that Moving Parties have displayed INC's trademarks and published the lyrics of INC's hymns. The screenshots are attached as Exhibits G and H to the Declaration of Nicole M. Goss, who is one of INC's attorneys in this case. *See* Goss Decl. Exhs. G, H, ECF 126-3 through 126-5. In the declaration, Goss does not provide any information as to who took the screenshots, or when. Goss states only that the screenshots were produced in discovery by her client, INC. *See* Goss Decl. ¶¶ 9-10, ECF 126. Moving Parties object to the screenshots, arguing that they are not properly authenticated and thus may not be considered on summary judgment. The Court agrees.

The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. Rule 901 provides a non-exhaustive list of ten methods of authenticating evidence, including "Testimony of a Witness with Knowledge." Fed. R. Evid. 901(b).[3]

A screenshot of online content may be authenticated by testimony of the person who took the screenshot, so long as the screenshot also contains circumstantial indicia of authenticity. *See Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 717 (N.D. Fla. 2019) ("Defendant may properly

---

[3] Federal Rule of Evidence 902, not applicable here, describes items of evidence that are self-authenticating and thus "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. Self-authenticating evidence may include certified documents, official publications, and printed newspapers or periodicals. *See id.* The screenshots do not fall within the scope of Rule 902.

6

authenticate the screenshots from WayBack Machine by providing testimony of a witness who saw and printed the posting from the WayBack Machine website, so long as the screenshots contain circumstantial indicia of authenticity."). Alternatively, "[e]xhibits depicting online content may be authenticated by a person's testimony that he is familiar with the online content and that the exhibits are in the same format as the online content." *United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017) (admitting archived screenshot from website that was disabled after commencement of investigation for child pornography, based on testimony of federal agent who had viewed the website before it was disabled and confirmed that the screenshot was the same as the formerly public website content). Screenshots of social media pages may be authenticated by evidence that the pages were maintained by the provider as business records, and evidence tracking the social media accounts to the defendants' mailing and e-mail addresses via internet protocol addresses. *See United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014).

INC offers no testimony from the person who took the screenshots in question, or any other evidence to authenticate the screenshots. Under similar circumstances, district courts within the Ninth Circuit have found screenshots of internet content to be inadmissible at summary judgment. In *Lipoplus, Inc. v. Kohan, M.D.*, a trademark dispute between two plastic surgeons, the plaintiff attempted to offer into evidence screenshots from the defendant's website. *See Lipoplus, Inc. v. Kohan, M.D.*, No. CV 18-10220 PSG (AGRx), 2019 WL 8231041, at *4 (C.D. Cal. Dec. 19, 2019). The district court found that the screenshots were inadmissible, as they could not be considered "[w]ithout a sworn affidavit introducing these documents or use of some other authentication method." *Id.* In *La Force v. GoSmith*, the district court found that screenshots were not adequately authenticated by a declaration of counsel including the date, device, and browser used to obtain the webpage and web application screenshots, where the declaration did not state that counsel retrieved the images. *See La Force v. GoSmith, Inc.*, No. 17-CV-05101-YGR, 2017 WL 9938681, at *3 (N.D. Cal. Dec. 12, 2017).

In *Shelby v. TufAmerica*, the plaintiff – like INC in the present case – submitted multiple pages of exhibits, including screenshots from a mobile device, stating only that she had produced the exhibits in discovery. *See Shelby v. TufAmerica, Inc.*, No. CV 15-5073 AG (JEMX), 2016 WL

7647679, at *2 (C.D. Cal. Sept. 14, 2016). The plaintiff provided no evidence identifying the exhibits or explaining where they came from. *See id.* The district court found the evidence to be inadmissible for lack of authentication, noting that "[a]uthentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Id.* (quoting *Orr*, 285 F.3d at 773). The district court rejected the plaintiff's argument that evidence produced in discovery is automatically authenticated, holding that a party may not authenticate evidence simply by producing it in discovery because "[o]therwise, a party could guarantee admission or authentication of a piece of evidence simply by producing it." *Id.*

Based on Rule 901 and the cases interpreting it, Moving Parties' objection to the screenshots submitted in Exhibits G and H to the Goss Declaration is SUSTAINED. The screenshots are not authenticated and therefore may not be considered on summary judgment.

### 2. Witness Declarations

INC submits the declarations of thirteen individuals who describe H2O worship services and other events that INC contends are probative of its claims. *See* Exh. D to Goss Decl., ECF 126-1.[4] Those declarants are: Joel G. Gutierrez, Jr. ("Gutierrez"); Araceli Lugtu ("Lugtu"); Ofelia Olegario ("Olegario"); Lorna B. Diaz ("Diaz"); Theodore B. Raza ("Raza"); Susan G. Soriano ("Soriano"); Erano P. Mallare ("Mallare"); Luzviminda Tugas Obiacoro ("Obiacoro"); John P. Borg ("Borg"); Eddie M. San Gabriel ("San Gabriel"); Rizalino C. Santos ("Santos"); Amor Tuzon Sagabaen ("Sagabaen"); and Julie S. Sales ("Sales"). *See id.* Moving Parties object to most of the declarations as inadmissible, on the basis that some are not sworn under penalty of perjury, while others are made on "information."

Moving Parties correctly point out that the declarations of Diaz, Raza, and Sagabaen are not sworn under penalty of perjury, citing authority for the proposition that "[a] declaration is not admissible as evidence if not verified as true and correct and signed under penalty of perjury." *Barroca v. Santa Rita Jail*, No. C04-0482 VRW (PR), 2006 WL 571355, at *4 (N.D. Cal. Mar. 3,

---

[4] While Goss states that Exhibit D includes eleven declarations, in fact Exhibit D contains thirteen declarations.

8

2006). While the Court agrees that the declarations of Diaz, Raza, and Sagabaen are not admissible in their current form, that is not a sufficient basis to exclude them at this stage of the proceedings. In order to prevail on their evidentiary objections, Moving Parties must show not only that the declarations are inadmissible in their current form, but also that they "cannot be presented in a form that *would be admissible* in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). "Evidence may be offered to support or dispute a fact on summary judgment . . . if it *could be presented in an admissible form* at trial." *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-26 (9th Cir. 2014) (internal quotation marks and citation omitted, emphasis added). At the hearing, INC's counsel represented that each of the declarants could testify at trial or submit amended declarations under penalty of perjury. Because Moving Parties have not demonstrated that the material contained in the declarations of Diaz, Raza, and Sagabaen could not be presented in admissible form at trial, the objections to those declarations are OVERRULED.

Moving Parties also argue that the declarations of Lugtu, Olegario, Soriano, Mallare, Obiacoro, Borg, San Gabriel, and Santos are inadmissible because they are made on "information." Moving Parties rely on Ninth Circuit authority for the proposition that a declaration that is not based on personal knowledge, but rather on information and belief, is not sufficient to raise a triable issue of fact on summary judgment. *See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) ("Because Irwin's declaration is not based on personal knowledge, but on information and belief, his statement does not raise a triable issue of fact regarding antitrust injury."). Moving Parties' reliance on that authority is misplaced. The word "information" appears in the subject declarations above the declarants' signatures, attesting under penalty of perjury that the facts set forth are true to the best of the declarants' "knowledge and information." Goss Decl. Exh. D, ECF 126-1, at INC 000004 (Lugtu Decl.); INC 000006 (Olegario Decl.); INC 000010 (Soriano Decl.); INC 000013 (Mallare Decl.); INC 000015 (Obiacoro Decl.); INC 000017 (Borg Decl.); INC 000019 (San Gabriel Decl.); INC 000021 (Santos Decl.). The use if the word "information" in that context does not suggest a lack of personal knowledge, and the declarations themselves set forth numerous facts that clearly are based on the declarants' personal knowledge. Accordingly, Moving Parties'

9

objections to the declarations of Lugtu, Olegario, Soriano, Mallare, Obiacoro, Borg, San Gabriel, and Santos are OVERRULED.

### 3. INC's Request for Judicial Notice

INC requests judicial notice of its "Our History" webpage, asserting that the webpage documents the fame and strength of INC's trademarks. *See* Pl.'s RJN, ECF 127. INC attaches eighteen screenshots taken from the website, describing the establishment and expansion of INC and containing photographs of its church buildings and founding members. *See id.* Moving Parties object to the request for judicial notice, arguing that the screenshots contain propaganda statements that do not bear on the strength of INC's trademarks and are not relevant to this litigation.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The screenshots from INC's website do not fall into either of these categories. The information regarding INC's history is not "generally known" within the Northern District of California, and the Court cannot say that INC – a party to this litigation – is a source whose accuracy cannot reasonably be questioned. "Federal courts considering the issue have expressed skepticism as to whether it is appropriate to take judicial notice of information or documents appearing on websites that are created and maintained by a party to the litigation." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015) (collecting cases). Accordingly, INC's request for judicial notice is DENIED.

### B. INC's Comments at Hearing Regarding Ongoing Discovery

At the hearing, INC's counsel made repeated references to ongoing discovery. When the Court emphasized that the current summary judgment motion is teed up *now*, and asked counsel why INC had not filed a motion for a continuance under Federal Rule of Civil Procedure 56(d) to allow for completion of the referenced discovery, counsel was unable to offer an explanation. To the extent that counsel's references to ongoing discovery could be viewed as a motion for continuance, such motion is without merit.

10

Rule 56(d) provides in relevant part that: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The party seeking additional discovery also must demonstrate that he or she diligently to pursue discovery in the past. *See id.* INC has not filed the requisite affidavit or declaration, proffered facts showing that ongoing discovery is likely to produce evidence that would prevent summary judgment, or demonstrated diligence in pursuing discovery in the past.

The Court finds INC's litigation conduct to be inexplicable. While the present summary judgment motion was filed on January 21, 2020, trial is not scheduled to commence until May 2022, and the last day for hearing dispositive motions is set on February 24, 2022. *See* Case Management Order, ECF 46. If INC had filed a motion for continuance upon receiving the summary judgment motion, the Court could have granted INC ample time to complete any discovery necessary to oppose the motion without disturbing the current case schedule. Under long-settled standards governing summary judgment, INC was on notice that if Moving Parties met their initial burden on summary judgment, the burden would shift to INC to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). A cursory review of Moving Parties' seven-page summary judgment motion would inform any competent counsel that Moving Parties have met their initial burden through unequivocal declaration statements denying infringing use of INC's trademarks and copyrighted hymns.[5] The Court would have expected INC either to ensure that it could complete all necessary discovery prior to filing opposition, or to seek a continuance of the summary judgment motion. INC did neither, but instead submitted an opposition brief supported

---

[5] As discussed herein, Dizon admits to non-infringing use of the hymns during worship services.

11

by hundreds of pages of exhibits that largely are inadmissible, as discussed above, and other exhibits with limited probative value, as discussed below.

Under these circumstances, given the lack of any formal motion for a continuance or showing of diligence, the Court concludes that the only reasonable course is to consider the fully briefed motion before it, along with the admissible record evidence, to determine whether each of the Moving Parties has established entitlement to summary judgment.

### C. INC's Failure to Tab or Separate its Exhibits

Before turning to the merits of the summary judgment motion, the Court briefly comments on INC's failure to tab the majority of its exhibits in the chambers copy of its opposition papers, and failure to separate the exhibits in a logical manner when they were filed electronically. These failures made it difficult for the Court to access the evidence cited by INC in its opposition brief, as INC's exhibits total more than 500 pages. When the Court raised this issue at the hearing, INC's counsel attributed the tabbing and electronic filing errors to a litigation assistant and an attorney service that since have been fired. Counsel also offered to supplement the opposition with a table of exhibits. The Court accepted counsel's explanation for the tabbing and electronic filing errors but declined counsel's offer to supplement the opposition. As the Court stated on the record, allowing INC to supplement its opposition after completion of the briefing would be unfair to Moving Parties. The Court advised counsel that it would make every effort to locate the evidence cited in the briefing. The Court trusts that tabs will be used in all future chambers copies and that exhibits will be separated appropriately in all future electronic filings.

### D. Trademark-Related Claims – Claims 1, 3, 4, and 5 (All Defendants)

Turning to the substance of the parties' arguments, the Court begins with INC's trademark-related claims. Claims 1, 3, 4, and 5, asserted against all Defendants, allege that Defendants unlawfully used INC's trademarks. Moving Parties contend that their declaration statements, denying any use of INC's trademarks after separation from INC, negate these claims. INC argues that there are disputed issues of fact that preclude summary judgment on the claims.

Claim 1 is for false designation of origin under 15 U.S.C. § 1125, and Claim 3 is for trademark infringement under 15 U.S.C. § 1114. The elements of a claim for false designation of

12

origin under § 1125 are virtually the same as the elements of a claim for trademark infringement under § 1114, although a § 1114 claim requires ownership of a registered trademark while a § 1125 claim does not. *See United States Futsal Fed'n v. USA Futsal LLC*, No. 17-CV-04206-LB, 2018 WL 2298868, at *10-12 (N.D. Cal. May 21, 2018) (listing elements of both claims); *see also Monster Energy Co. v. Beastup LLC*, No. 2:17-CV-01605-KJM-EFB, 2019 WL 3803679, at *3 (E.D. Cal. Aug. 13, 2019) ("A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114.").

Under § 1125, "a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, that (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *United States Futsal Fed'n*, 2018 WL 2298868, at *12. "To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that (1) it owns the trademark at issue; (2) the defendant used in commerce without authorization any reproduction, counterfeit, copy, or colorable imitation of the mark in connection with the sale, offering for sale, distribution, or advertising of any goods and services; and (3) the defendant's use of the mark is likely to cause confusion, cause mistake, or deceive." *Id.* at *10. INC alleges that Defendants are liable under both §1125 and § 1114 due to their use of INC's name, Seal, Executive Seal, and Flag, in a manner causing confusion to the public as to Defendants' affiliation with INC. *See* SAC ¶¶ 54-55, 90-91, ECF 111.

Claims 4 and 5 are for unfair competition under California Bus. & Prof. Code § 17200 and state common law, respectively. Both claims are based on alleged use of INC's trademarks. The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Thus, Claims 4 and 5 rise or fall with Claims 1 and 3.

To meet their initial burden on summary judgment, Moving Parties submit the declarations of Cayabyab, Dizon, De La Uso, Ramos, Kuizon, Mora, and Villaneuva, each of whom expressly

13

denies claiming affiliation with INC after separating from INC; using INC's Seal, Executive Seal, or Flag; or maintaining, registering, or posting to the following websites, which INC claims have displayed its trademarks: *www.incsilentnomore.com*, *www.incdefenders.org*, *www.incdefendersmedia.com*, *www.incfromtheedge.wordpress.com*, or *www.increflections.wordpress.com*. *See* Cayabyab Decl. ¶¶ 5-8, ECF 125-1; Dizon Decl. ¶¶ 3-6, ECF 125-4; De La Uso Decl. ¶¶ 3-6, ECF 125-3; Ramos Decl. ¶¶ 3-6, ECF 125-6; Kuizon Decl. ¶¶ 4-7, ECF 125-7; Mora Decl. ¶¶ 3-6, ECF 125-5; Villaneuva Decl. ¶¶ 6-9, ECF 125-2. Cayabyab also states that he is the Chief Executive Officer of H2O, and that H2O has not used INC's Seal, Executive Seal, or Flag, and has not maintained, registered, or posted to any of the above websites. Cayabyab Decl. ¶¶ 3-7, ECF 125-1. This evidence is sufficient to meet Moving Parties' initial burden with respect to the trademark-related claims, as it negates the use in commerce requirement for both the § 1125 claim (Claim 1) and the § 1114 claim (Claim 3). As noted above, the § 17200 claim (Claim 4) and common law unfair competition claim (Claim 5) are derivative of the Lanham Act claims.

The burden shifts to INC to come forward with evidence that each of the Moving Parties has used INC's name, Seal, Executive Seal, or Flag in commerce. INC relies on the declarations of thirteen individuals, submitted as Exhibit D to the Goss Declaration, and on screenshots submitted as Exhibit G to the Goss Declaration, to meet its burden. For the reasons discussed above, the screenshots in Exhibit G are inadmissible. Accordingly, the only admissible evidence submitted by INC regarding Moving Parties' use of its trademarks consists of the declarations submitted as Exhibit D to the Goss Declaration. The declarations contain facts suggesting that Moving Parties Cayabyab, Dizon, and H2O have used INC's name and/or trademarks in worship services posted to the internet, which this Court previously has held would be sufficient to meet the use in commerce requirement of both § 1125 and § 1114. *See* Order Denying Anti-SLAPP Motions at 14-16, 19, ECF 110. However, the declarations do not contain any facts suggesting use of INC's name or other trademarks by Moving Parties De La Uso, Ramos, Kuizon, Mora, or Villanueva.

### 1. Cayabyab, Dizon, and H2O

Some of the declarations presented by INC suggest that Cayabyab, Dizon, and H2O have used INC's name and other trademarks in worship services. Both Soriano and Mallare state that they have observed online worship services conducted by Cayabyab and Dizon "posing like they are still members and ministers of the Church of Christ." Soriano Decl. ¶ 12; Mallare Decl. ¶ 9. Soriano and Mallare say that Cayabyab and Dizon were "mentioning the name of the Church of Christ making it appear to the attendees that the same is still a gathering of the Church of Christ which is purely a deception and fraud committed by them to the members of the Church of Christ." Soriano Decl. ¶ 12; Mallare Decl. ¶ 9.

Soriano and Mallare also state that in one online worship service, "they" were using INC's Seal. Soriano Decl. ¶ 13; Mallare Decl. ¶ 10. Soriano and Mallare identify Cayabyab as one of the individuals leading the prayer meeting where INC's Seal was used. Soriano Decl. ¶ 13; Mallare Decl. ¶ 10.

Raza states that his wife was expelled from INC in 2016 and thereafter she began attending "gatherings" of other expelled INC members. Raza Decl. ¶¶ 5-6. Raza learned from his wife that the expelled INC members formed a group, H2O, which conducts worship services in the style of INC, involving ministers acting as though they are still affiliated with INC, and using the Seal of INC. Raza Decl. ¶ 9. Santos states that he viewed a worship service online where "detractors" who formed H2O called themselves members of INC and used the seal/mark of INC. Santos Decl. ¶¶ 10-12. Diaz states that she has viewed a worship service online conducted by H2O members acting as though they were INC members and using INC's Seal. Diaz Decl. ¶¶ 6-8.

While the statements of these declarants could be more detailed, they are sufficient to give rise to reasonable inferences that Cayabyab, Dizon, and H2O have conducted worship services using INC's name and holding themselves out as affiliated with INC. The statements also give rise to reasonable inferences that Cayabyab and H2O have used INC's Seal during worship services. Accordingly, there are material issues of fact as to whether Cayabyab, Dizon, and H2O used INC's trademarks in commerce.

In their reply brief, Moving Parties argue that even if the Court were to conclude that INC

15

has demonstrated use of its trademarks, application of the *Sleekcraft* factors would require that the summary judgment motion be granted on the basis that INC cannot demonstrate likelihood of confusion. As discussed above, to establish liability under §§ 1125 and 1114, INC must demonstrate not only that Moving Parties used its marks in commerce, but also that such use is likely to cause confusion. To determine whether a likelihood of consumer confusion exists, the Ninth Circuit "relies on the eight-factor *Sleekcraft* test, which reviews: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (*citing AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003)).

Moving Parties' argument that INC cannot demonstrate likelihood of confusion under the *Sleekcraft* factors is raised for the first time in the reply brief. Moving Parties sought summary judgment on the trademark-related claims based solely on their assertion they did not use INC's marks after separation from INC. The motion brief does not address likelihood of confusion or mention the *Sleekcraft* factors at all. Only after INC responded with evidence that Moving Parties did use INC's name and other trademarks in online worship services did Moving Parties for the first time attack the element of likelihood of confusion in the reply brief. Under these circumstances, the Court concludes that Moving Parties' arguments regarding likelihood of confusion are improper and will not be considered. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Perez v. Health*, No. 15-CV-01792-HSG, 2016 WL 3439752, at *9 (N.D. Cal. June 23, 2016) ("Because it is not appropriate for this Court to address arguments raised for the first time in a party's reply, the Court DENIES JMH's motion for summary judgment as to Cerisano's failure to accommodate claims.").

In conclusion, Moving Parties seek summary judgment on INC's trademark-related claims

based on evidence that Moving Parties have not used INC's name or other trademarks since separation from INC. Moving Parties have submitted evidence to meet their initial burden on that point which, if accepted by a jury, would negate the use in commerce requirement of §§ 1125 and 1114. However, INC has presented evidence sufficient to demonstrate disputed facts as to whether Cayabyab, Dizon, and H2O used INC's names and other marks in commerce. Accordingly, the motion for summary judgment is DENIED as to Claims 1, 3, 4, and 5 with respect to Cayabyab, Dizon, and H2O.

### 2. De La Uso, Ramos, Kuizon, Mora, and Villanueva

In contrast, the declarations presented by INC contain no facts suggesting use of INC's trademarks by De La Uso, Ramos, Kuizon, Mora, or Villanueva.

De La Uso is mentioned in the Sales Declaration, but not in connection with use of INC's trademarks. *See* Sales Decl. ¶ 6, Exh. D to Goss Decl., ECF 126-1. Sales states that after expulsion from INC, she joined online gatherings at which she observed several other individuals who had been expelled from INC, including De La Uso, collecting funds on behalf of the "oppressed" in the Philippines. *See* Sales Decl. ¶ 6. Sales does not state that De La Uso used INC's name or other trademarks in collecting funds. *See id.*

Ramos is mentioned in the declarations of Soriano, Mallare, Obiacoro, San Gabriel, and Sales. Soriano, Mallare, and Obiacoro describe seeing Ramos lead worship gatherings and referenced on social media posts. *See* Soriano Decl. ¶ 9; Mallare Decl. ¶¶ 4, 6; Obiacoro ¶ 6. San Gabriel characterizes Ramos as one of the leaders of the "detractors" who were expelled from INC. *See* San Gabriel Decl. ¶ 7. Sales states that she observed Ramos at online gatherings collecting funds for the "oppressed" in the Philippines. *See* Sales Decl. ¶ 6. None of these declarants say that Ramos represented himself as a member of INC or used INC's trademarks.

Kuizon is mentioned in the declarations of Borg and Sales. Borg states that he has seen corporate papers naming Kuizon as a key officer of H2O. *See* Borg Decl. ¶ 10. Sales states that Kuizon is the secretary of H2O. *See* Sales Decl. ¶ 11. Neither declarant says that Kuizon represented himself as a member of INC or used INC's trademarks.

Mora is mentioned in the declarations of Mallare and San Gabriel. Mallare states that

17

Mora is associated with H2O based on social media postings. *See* Mallare Decl. ¶ 12. San Gabriel states that Mora is a leader of the "detractors" who were expelled from INC. *See* San Gabriel Decl. ¶ 7. San Gabriel also asserts that Mora and other "detractors" use the website INC Defenders Media and the blog authored by Antonio Ebanghelista, where INC's trademarks are displayed. *See* San Gabriel Decl. ¶ 9. However, San Gabriel offers no facts demonstrating that he has personal knowledge that Mora uses the website INC Defenders Media or the Ebanghelista blog. *See id.*

None of the thirteen declarations submitted by INC mentions Villanueva. *See* Exh. D to Goss Decl., ECF 126-1.

Accordingly, INC has failed to meet its burden of establishing the existence of disputed facts as to the alleged use of INC's trademarks by Moving Parties De La Uso, Ramos, Kuizon, Mora, or Villanueva. The motion for summary judgment therefore is GRANTED as to Claims 1, 3, 4, and 5 in favor of Moving Parties De La Uso, Ramos, Kuizon, Mora, or Villanueva.

### E. Copyright Claim – Claim 2 (Defendants Cayabyab, Dizon, and H2O)

Claim 2, asserted against only Cayabyab, Dizon, and H2O, alleges that those Defendants infringed on INC's copyrights in a number of hymns. In his declaration, Cayabyab states that neither he nor H2O used INC's copyrighted hymns. *See* Cayabyab Decl. ¶ 6, ECF 125-1. Dizon admits to performing INC's hymns during worship services, but he denies copying, distributing, or publishing the lyrics of INC's hymns. *See* Dizon Decl. ¶ 4, ECF 125-4. Performance of the hymns during worship services is exempted from protection under the Copyright Act. *See* 17 U.S.C. § 110(3) (exempting from copyright protection "performance of a nondramatic literary or musical work or of a dramatico-musical work of a religious nature, or display of a work, in the course of services at a place of worship or other religious assembly"). Accordingly, Moving Parties' declaration statements are sufficient to meet their initial burden of showing that they did not infringe INC copyrights in its hymns.

The burden shifts to INC to come forward with evidence that Cayabyab, Dizon, and H2O used its hymns in an infringing manner. INC argues that these Defendants posted videos displaying the lyrics of INC's hymns on YouTube and other internet websites. Publishing the

18

lyrics of the hymns would fall outside the exemption for "performance" of the hymns during worship services. INC relies on the declarations discussed above, submitted as Exhibit D to the Goss Declaration, and on screenshots submitted as Exhibit H to the Goss Declaration, to meet its burden. For the reasons discussed above, the screenshots in Exhibit H are inadmissible. Moreover, none of the declarations submitted by INC states that Cayabyab, Dizon, or H2O posted the hymns' lyrics to the internet or published the hymns' lyrics in any other form. Accordingly, INC has failed to meet its burden to present evidence sufficient to show the existence of disputed facts on that issue.

Because Moving Parties have submitted evidence that they did not infringe INC's copyrights, and INC has failed to submit evidence sufficient to show the existence of disputed facts as to copyright infringement, the motion for summary judgment is GRANTED as to Claim 2.

**IV. ORDER**

(1) As to Defendants De La Uso, Ramos, Kuizon, Mora, and Villanueva, the motion for summary judgment is GRANTED IN ITS ENTIRETY;

(2) As to Defendants Cayabyab, Dizon, and H2O, the motion for summary judgment is GRANTED as to Claim 2 for copyright infringement and DENIED as to Claims 1, 3, 4, and 5; and

(3) INC is granted thirty days to file proof of service of process on Defendants Samson and Nemis; failure to do so will result in dismissal of Samson and Nemis for failure to effect service of process as required under Federal Rule of Civil Procedure 4(m).

Dated: March 31, 2020

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge

19